Tilghman C. J.
This ejectment was brought in the name of Thomas Duncan for the use of the heirs of Hugh Logan deceased. The plaintiff derived his title from an application in the name of Lawrence Peterson, dated 4th of November, 1766, on which a survey was made by Richard Tea, (deputy surveyor) 6th January, 1767. This survey was not returned, but the plaintiff alleges it was made for the use of George Armstrong, who paid the surveying fees. A judgment was obtained by William Dowell against George Armstrong, on which an execution was taken out by his widow and executrix, Grace Parr. The land in dispute was levied on and sold by the sheriff, to Thomas Duncan, who sold to Hugh Logan, but did not execute a conveyance. The defendants claim under a settlement made by Francis Cluggage deceased, and also a settlement made- by Jacob Hare, whose right Francis Cluggage purchased.
The first exception taken by the defendants was to the opinion of the court of Common Pleas, on a point of evidence. The defendants offered the deposition of William. Samuels, taken in a former ejectment brought by Hugh Logan, in his lifetime, against Francis Cluggage. The plaintiff objected to this deposition, and the court rejected it. Had the deposition been taken in an action between the same parties, for the same land, it would have been evidence. But this is not the case. The former ejectment was by Hugh Logan, this by Thomas Duncan. It is said in answer, that this ejectment being for the use of Hugh Logan’s heirs, is in -equity their ejectment. This is very true, but when we take ~ an equitable view of the case, we must look at both sides. When Logan brought the former ejectment, he was not master of Armstrong’s title. Having afterwards bought that title of Thomas Duncan, the present ejectment was brought. So' that in truth, the two actions rest on different,titles, and.it *117 might be doing injustice to the pláintiff to introduce a deposition taken under different circumstances. The points of •inquiry may be different, and consequently it may be necessary to ask different questions of the same witness. The plaintiff then has the law of his side, the two actions being between different parties on the face of the record, and so also, in my opinion, he has the equity. The deposition therefore was not evidence. The counsel for the defendant after the evidence was closed, requested the opinion of the court, on eight points, which are next to be considered.
1. “ That there áre no facts from which the jury can pre- “ sume, that the.survey on Lawrence Peterson’s application, u was for the use of George Armstrong.”
The court were of opinion, that the facts proved, afforded sufficient ground for a presumption in favour of Armstrong ; but at the same time, they left the matter to the jury: The facts proved, were, that Armstrong paid the surveying.fees, and that this survey was included in a letter to Richard Tea, from his assistant, Robert McKenzie, containing a list of surveys made for George Armstrong. When an application was entered, the presumption was, that it was for the use of the person in whose name it stood ; but it was so common a practice for applicants to make use of the names of other persons,, in trust for themselves, that it does not require very strong-evidence to counteract the first presumption. Superintending the survey or paying the fees, has generally been deemed sufficient, unless rebutted by evidence, that the person so superintending or paying, acted as an agent; or unless possession or some act of ownership appeared in favour of the person, in whose name the application was entered. In this cáse there is not only the paying of the fees proved, but also, the return of the assistant surveyor to his principal, which is a very strong circumstance; so that I think the jury would be warranted in presuming the property to be in Armstrong.
2. “ That if the jury believed the testimony of Gabriel Pe- “ ter son, relative to the engagement of George Armstrong, to “ take out applications for Lawrence Peterson and Jacob “ Hare, then any location taken out by George Armstrong, “ will enure to the use of Jacob Hare, and those claiming “ under him, so far as the same covers the original claim of “ Jacob Hare.”
■On this point, the opinion of the court was against the de *118 fendant, who claimed under Hare. If an application had been, “entered in Hare's name, it would have been notice that the legalfoundation of the title was in him, and the verbal agreefment of Armstrong would have strengthened that foundation, so that a purchaser under Armstrong could not have sheltered himself under the plea of ignorance of Hare's title. But as no application was entered in the name of Hare, it would be most unjust and contrary to all principle, that a secret verbal promise, should be setup against a bond fide purchaser for valuable consideration, without notice. Such was Thomas Duncan, who purchased Armstrong's right at the sheriff’s sale. I am of opinion therefore, that he could not be affected by any equity in Hare.
3. “ That the deed from William Winton to Hugh Logan, “ is evidence, that Hugh Logan held adversely to George “ Armstrong, from the date of that deed, and that the plain- “ tiff’s suit is barred by the act of limitation.”
It seems, that Logan had purchased the right of one Win-ton., who set up a title by settlement, before he made the purchase of Duncan. But this does not prove that Logan held adversely to Armstrong. A man may purchase as many titles as he pleases. Nothing is more common than to buy fi bad title, in order to get rid of a troublesome adversary. But it is an extraordinary attempt, to make Logan set up the act of.limitation against Armstrong's title, whether he will or tíot. No man is obliged to take advantage of the act of limitations. So far therefore, as Logan was concerned, he had a. right to say, that the act of limitations should not be set up against the title of Armstrong. If the defendant can protect himself by the statute, he has a right to do so. But then he must stand upon his own possession, and not call in the plaintiff to assist him. I. agree therefore on this point with the court of Common Pleas.
4. .“ That as to all the land which was in the actual pos- “ session of Francis Cluggage for twenty-one years, pre- “ viously to the institution of this suit, the plaintiff was “‘barred by the act of limitations.”
The opinion of the court was, that the statute was a bar as to all. land, inclosed -within fence, and no more. This opinion was right; Cluggage had no survey, therefore there was nothing to which his possession could refer, but his inclosure. If-one has-possession by inclosure of part of a tract of land, *119 ■which has known boundaries, and at the same time claims the whole, this is sufficient possession of the whole, and the act of limitations will operate in favour of the whole, provided no other person has possession in fact or in law. But if another person has possession of part of an adjoining tract, the lines of which interfere, in such case the law adjudges the possession of the uninclosed part to be in him who has the best right, and the act of limitations will have no effect except as to the part which is actually inclosed.
5. “ That the patent granted to Hugh Logan, and the deed “ poll therein recited, must estop the plaintiff in this suit from “ alleging title in his lessor.”
Before Logan purchased of Duncan,ixo had obtained a patent for the land, in which is recited a deed poll from Lawrence Peterson to Logan. The observations, in my opinion, on the 3d point will apply to this. There is nothing like an estoppel. Logan found great difficulty in coming at the right title. He purchased three different titles, including the deed from Lawrence Peterson, if such a deed really existed. We. know very well that these deeds poll are often fabricated. Fictir tious names are often used in entering applications, and the real owners sometimes take the liberty of making a deed, and signing a fictitious name to it. It is a practice to be reprobated. How the fact was here I know not; but supposing it to be a genuine deed, it does not estop the grantee from purchasing another title, and defending himself under it. The defendants were neither parties nor privies, to the deed poll from Peterson to Logan, and therefore have no right to set it up as an estoppel.
6. “ That the discontinuance of the suit, Hugh Logan v. “Francis Cluggage in 1801, and delaying to institute a new “suit, or give notice of an intention to do so, until 1805, are “ circumstances from which the jury may presume an aban- “ donment, or fraud, in Logan; provided, in the mean time, “ Cluggage, or the defendants, made valuable improvements “ on the land.”
To this the court very properly answered, that the jury might judge of the matter, although in their own opinion, as there was. no proof of any houses being built from 1801 to 1805, the delay was a circumstance of but small moment.
r. “ That the interest of George Armstrong hath not been “ legally transferred- to Thomas Duncan.”
*120 ■ The-defendants contend that Armstrong's interest did not' pass, because either in the fi.fa. or vend. exp. the plaintiff is llamecj ag QraCe Parr, executrix of the last will and testament of William M' Dowell instead of William Dowell. This is no more than a clerical error, which the court, from which the writ issued, would amend at any time, and even if error were brought, the superior court would order an amendment. The Court of Common Pleas, therefore, was right in saying that the proceedings could not be declared, void in this collateral manner.
8. “ That if the jury believe that the survey returned by “ John Canan was made by the consent of Hugh Logan, then “ the plaintiff cannot recover any land not included in that “ survey.”
To this the Court of Common Pleas assented, but remarked that, it did not apply to the case before them, as there was no land in controversy, not included in Carian's survey.
On the argument in this Court, the plaintiffs in error brought forward two other exceptions, to the charge of the court — the whole of which has been laid before us.
1. “The Court erred in saying, that Gabriel Peterson's “failing in his action, was strong presumptive evidence “ against the title of his father, Lawrence, under whom he “ claimed.”
I can pexxeive nothing like error in this. . The plaintiff claixned under his father; after the evidence and arguments, of counsel closed, the court charged in favour of the defendant ; upon which the plaintiffs sufle2-ed a non pros. Why did he suffer it, but fxxm an expectation that the vet'dict would be against him ? If the verdict had been against him, would it not have been a strong pxxsumption of the defect of his father’s title ? And where is the difference betweexi a verdict and a non pros, under such circumstances ?
2. “ The Court erred in saying, that as to the claim of “ Hare, there is no pretence of title under which the defend-1 “ ant can be protected. It should have been left to the juxy “ to decide, whether Hare had abandoned his claim by set- “ dement.”
Where the matter is at all doubtful, it should be left to the jury. But abandonment is not in all cases a matter of-fact¿ It may be a conclusion of law from facts. Where a man makes a settlement and leaves it for- a great lexxgth of time, it . *121 ¿loes not signify for him to say, that he keeps up his claim. The law declares that such verbal claims have no avail, against the act of relinquishing the possession. And in such case I consider it as the right of the judge to declare the conelusion of law. I am therefore of opinion that here is no error.
On the whole, my opinion is that the judgment should be affirmed.
Yeates J.
The plaintiffs have assigned for error, that the court have over-ruled the deposition of William Samuels in evidence. It consists of the declarations of Lazurence Peterson, in whose name the application was taken out six years afterwards, that George Croghan had given him the tract of land called Turkey Hill; and that he (Peterson) and Jacob Hare, under whom the plaintiffs claimed, had agreed upon the hill as the consentible line between them. There is this capital objection to the deposition, independently of others to the greater part of it, that Samuels was in full life at the time of the trial. The deposition was taken under a rule of court in another cause for the same land, wherein the lessee of Hugh Logan was plaintiff, and Francis Cluggage defendant, whose children are the plaintiffs in error. It was admitted on the trial, that Mr. Duncan is but a mere trustee, having contracted to convey the land to Hugh Logan, and that this suit is carried on for the use of his heirs. There may be said, therefore, to be a privity of interest and estate between the real suitors here and the parties to the former suit. But it ought to have been shewn that proper efforts were used to obtain the attendance of the witness, that he was sought for and could not be found, or that he was disabled by sickness from attending. (Gilbert’s Lazv of Evidence, 61, 62. and the authorities cited). The 48th rule of practice of this Court, that a deposition taken under a rule of court may be read in evidence without further proof, if the witness is resident within this state, and above 40 miles of the place of trial, will not remove this objection, because it evidently relates to witnesses examined in the same cause, and has always been so understood.
Whether there was such an adverse possession in the plaintiffs in error, or their father, of the lands in controversy, as took away the defendants’ legal right of entry, was a fact *122 Submitted to the jury for their decision, upon the contradic - tory proofs. This affords no cause of error, or ground of C0mplaint. I know not what else could be said to the jury, after stating the variance in the testimony, unless the Court bad thought proper to give a more decided opinion, or declare (what I think they would be justified in) that the weight of evidence shewed that the limitation act did not apply.
There is no evidence positive or presumptive, from which it may be collected that the application was entered by Francis Cluggage, or for his use. We know that the names of other persons are frequently made use of, in order to evade the regulations of the land-office established on the 17th June, 1765 (2 Sm. Laws, 160), that no application should be received by the secretary for more than 300 acres to any one person, without the special order of the proprietories, or the commissioners of property'. The practice probably was adhered to for the emolument of the officers, after it had been shewn by experience that the precaution was fruitless as to its effect, in the absence of other proof direct as to the ownership of the application. Activity in procuring the application to be effectuated, and payment of the surveying fees, have always been regarded as presumptive evidence of property in the party. The presumption will stand until the contrary be proved. I have witnessed several instances wherein recoveries have been decided,* upon the ground of the surveying fees having been paid by the plaintiffs. I take it to be the duty of the presiding judge to give to the jurors his opinion in cases of presumptive evidence of the facts which may be fairly inferred ; he ought to enlighten their understanding, but not to lead them by the nose, according to the phraseology of Clive J. in Francis v. Baker, 5 Bac. Abr. 246, (1st ed.) If he errs in detracting from the just weight of testimony, or laying undue stress upon any part of it, the remedy of the party is by motion for a new trial.(a) And we are bound to presume that the court will grant the motion, upon being satisfied that an error has been committed. The observations of the president are fortified by the consideration that Lawrence Peterson did not pursue his claim under the application. Whether there was any engagement by Armstrong to *123 enter application for the use of Lawrence Peterson, was a fact submitted to the decision of the jury under all the circumstances of the case. But as to the plaintiffs in error, their claim of title, as well as their father’s, was under the supposed improvements of Jacob Hare, said to have been begun in 1760, but deserted -in 1763, and to which he never returned.
I cannot conceive'how the purchase made by Hugh Logan, of a supposed Lawrence Peterson, of his title to the lands in question, or his obtaining a re-survey and a patent thereon, can operate as an estoppel against his heirs, who have instituted the present suit, in the name of Mr. Duncan, for their use. No law or rule of morals forbids a man who has obtained a conveyance for land, which will not confer a good right, from purchasing in another title from the true owner. A man may lawfully have two strings to his bow; and the sound string is not vitiated or impaired in its effect by the unsound one.
I-fully concur in the charge of the court, that the discontinuance of Hugh Logan’s ejectment in 1801,- and the delay in instituting a new suit until 1805, are circumstances from which an abandonment may be presumed; particularly where the suit lies by while valuable improvements are made in the mean time on the land by the party in possession. But íñ this intermediate period little improvement was made, which the profits of the premises did not fully compensate. No building was erected thereon between 1801 and 1805. But here Was a delay of which the jury will judge from the circumstances. Let it avail what it can. To the court below it appeared to be slight proof an abandonment of title by Logan or his heirs, and I do not dissent from them,
Upon the whole, I am of opinion that no such error appears in the course of this trial, as would justify us in reversing the judgment of the Court of Common, Pleas 5 and, therefore, I am for affirming the judgment.
Brackenridge J, concurred.
Judgment affirmed.

 2 Binney 89. Burd v. Dansdale's Lessee.