Tilghman, C. J.
[After stating the points.]—The opi-. nions of the Court of Common • Pleas on these three points, are complained of by the plaintiffs. They are, therefore, to be considered by this Court.
1. The plaintiffs say that the effect of Donnel’s acts and conversations with the defendant was matter of law, and ought not to have been left to the j’ury. But I do not see how the Court could have decided it. The facts were not sufficiently clear. It did not appear by what authority, or at whose request, Donnel entered and made the survey ►-«nor, whether there was an intent to enter, in order to interrupt the defendant’s possession. It was decided, in Ford v. Lord Grey, 6 Mod. 44, that it was necessary to prove the entry to have been made animo clamandi. Whether it was so made in the present case, or whether Donnel was authorised by the plaintiffs to make it, was by no means certain. The Court could not take on itself to decide a doubtful fact; of necessity therefore, it was left to the jury. The same observations will apply to the conversations between Donnel *134 and the defendant. There was no express recognition of the plaintiffs’ title. The defendant talked of going to the plaintiffs or some of them, and purchasing, if they had good title. There was no fact clearly proved, from which the Court could deduce the law.
2. As to the levy and sale by the Sheriff, the plaintiffs have no reason to complain of their being submitted to the jury. From any thing that appears on the record, that point ought to have been decided against the plaintiffs. It does not appear that the Sheriff ever entered. He returned, that he had levied “ on 1000 acres of land in Nippenose valley, adjoining Jonathan Walker.” No mention is made of the defendant, nor is the land described by the Sheriff, as being in possession ®f the defendant, or having been improved by him. It would be too much, to construe such a proceeding to be an entry, sufficient to interrupt the course of the Act of Limitations.
3. The third point is of great importance, but it is not new. If I am not mistaken, it has occurred, and been decided in this Court, in the Courts of several other States, and in the Supreme Court of the United States.. The law of possession is not quite the same in countries long settled and thickly inhabited, and in those where lands in a state of nature are purchased of the Government, very often, with a view of retaining them in an uncultivated state, until they can be vended to advantage, or where the original purchaser, although he wishes to sell, may not find an opportunity for many years. This is the case with what are called our Back-lands. The original purchaser pays his money to the Government, has his land ascertained by survey, and pays taxes on it. With regard to such lands, it has been found expedient, to establish it as a principle, that the owner is in actual possession, although neither he, nor any one under him, be actually residing on the land. In this situation stood the person under whom the plaintiffs derive title, at the time the defendant entered and began his improvement. The defendant entered without title, or even colour of title ; how then could he take away from the plaintiff,- the possession of any more than he actually cultivated, or inclosed ? If he took more, how much was it, and what was its limits ? There is no ground for a constructive possession beyond the bounds *135 of the defendant’s inclosure. He had no pretence, or colour of title, to the whole tract surveyed for William Nichols. If he had claimed that identical tract, by title either of descent or purchase, (although his title turned out bad,) and had entered on-part of it, in assertion of his claim, neither the plaintiffs nor any other person under them being on the land, the case would have been very different. But he made no such claim. He set himself down as a settler, although he was in truth a trespasser, and nothing more. For, there is no law or custom of this State, authorising a settlement on land which has been appropriated by survey. But, it is complained of, as a very hard thing, that a man who expends his time and labour on a tract of woodland, should be confined to the limits of his inclosure—nay, that even within these limits, he should be unable to acquire title,' by less than twenty-one years possession. This is looking only on one side of the question. Is it not also hard, that a man who has bought and paid for his land, should be deprived of it without consideration ? If the settler, knows of the prior appropriation, he acts 'dishonestly, in attempting to acquire title by the Act of Limitations. If he is ignorant of it, he is unfortunate, but his misfortune is owing to his own negligence—for, with proper diligence, he might have known it. Still, I have strong feelings for persons in that situation. The hardship of their case, is entitled to great consideration from the owner of the land, but must not be suffered to shake the principles of the law. Another reason, why a settler should not gain possession by construction, beyond the bounds of his inclosure, is, that he is under no obligation to take any definite quantity, nor to lay out his land in any particular shape. In the present case, for instance, the defendant seated himself on the tract surveyed for William Nichols. But there were two other tracts adjoining, (in all, 1000 acres.) Now in what direction, was the defendant’s possession to diverge from the point where he erected his first cabin and commenced his cultivation? And as he proceeded in his cultivation, what notice had the plaintiffs of the shape in which he intended to lay out his land, or of the quantity he intended to take ? Instead of taking the whole of William Nichols’s tract, he might have taken part of that, and part of one of the others. The more the matter is considered, the *136 more are we convinced of the difficulties attending this constructive possession contended for by the defendant. These difficulties have induced Courts of Justice to reject it as unjust and inexpedient, as I shall proceed to shew. In Cluggage (in error) v. Duncan’s Lessee, 1 Serg. & Rawle, 111, this Court affirmed the opinion of the Court of Common Pleas of Huntingdon county, that the Act of Limitations was a bar, as to all land within the defendant’s inclosure, and no more. In Burns (in error) v. Swift, 1 Serg. & Rawle, 436, this Court was of opinion, “ that the law threw upon the plaintiff, the possession of all the land within the bounds of his survey, and when the defendant who claimed under an application founded on an improvement subsequent to the plaintiff’s survey, entered and took possession of part, and inclosed it, the possession of the part inclosed was completely adverse and exclusive, so that the plaintiff had no pretence to say it remained in him. But as to the other part, the plaintiff was not ousted of his possession, and having the better right, the possession should remain in him although claimed by the defendant.” In this case of Burns v. Swift, the opinion of the Court was delivered by me, and assented to by the late Judge Ye ates who was present; and it is of importance to observe, that in that opinion I mentioned, that I understood, C. J.'M‘Kean and Judge Yeates had recognised the same principle in decisions at Nisi Prius. That the possession of a person who enters without title, shall not be extended by construction beyond the limits of his fences, was laid down by Judge Duncan, who delivered the opinion of this Court, in Hall v. Powell, (Chambersburg, Sept. Term, 1818,) and by Judge Washington, who delivered the opinion of the Circuit Court of the United States at Philadelphia, April Term, 1818, in the case of Potts’s Lessee v. Gilbert. When we go out of our own State, we shall find the same principle supported by Courts of the highest reputation and authority. In Brandt v. Ogden, (Supreme Court of New York, 1 Johns. 158,) it is said, that in order to bar the plaintiff’s recovery, by the Statute of Limitations, the defendant’s possession must be “ marked by definite boundaries.” In Jackson ex. dem. Hardenberg and wife v. Schoonmaker, (2 Johns. 230,) the opinion of the Court was delivered by C. J. Kent, as follows:—“There must be a real and sub» *137 stantial inclosure, an actual occupancy, or possessio pedis, which is definite, positive and notorious, to constitute an adverse possession, when that is the only defence, and to countervail a legal title.” And to the same effect was the opinion of the General Court of Maryland in the case of Ringgold’s Lessee v. Cheney, (4 Hall’s Law journ. 128.) In Davidsons’ Lesseee v. Baker, in the Court of Appeals of Maryland, (3 Harr. & M'Henry, 621,) it was declared by the Court, that “ where one claims by possession alone, without shewing any title, he must shew an exclusive adverse possession by inclosure, and his claim cannot extend beyond his inclosure.” In Barr v. Gratz, (4 Wheat. 223,) it was held for law by the Supreme Court of the United States, that a patent granted for vacant land by the State of Kentucky, vested the patentee by operation of law, with a constructive, actual seisin., of the whole land contained within the patent; and that a disseisor who enters without title, is limited to the bounds of his'actual occupancy. From the reason of the thing therefore, strengthened by the force of these concurring authorities, I am of opinion, that the charge of the President of the Court of Common Pleas, was erroneous on the third point, and the judgment should be reversed.
Gibson, J.
It is a well established principle, both in England and in our sister States, that there can be no constructive possession in favour of a wrongdoer; and that a defendant setting up the Statute of Limitations, shall hold no more by it, than what he has had in actual, occupancy. In this State, a notion, derived from the peculiar nature of our improvement title, seems to have been entertained, that a wrongdoer entering on unseated land, may acquire a constructive possession of whatever he could hold as an improver, if the land were actually vacant, and, for that purpose, avail himself of the survey of the owner, or establish a boundary of his own ; and that, he shall, in either case, be considered in the constructive possession of all the land thus included. What reason or justice is there in this? I grant, that as against a third person, the occupant of land, seated on a part of it, clearing, plowing and sowing other parts, and exercising acts of ownership over the rest, like other men in similar circumstances, shall be taken to be in possession of the whole tract. *138 as well the wood land, as what is cleared and fenced; and this, so far as to afford him the benefit of protection, under the statutes of forcible entry, even against the owner: because, as the title cannot be enquired into in a proceeding on those statutes, the owner having entered by force, must be treated as a trespasser, and the prosecutor as having been rightfully in possession. But the principle is, in no wise, applicable to a case where the occupant defends himself avowedly and exclusively, on the ground of his own wrong ; for constructive possession is an incident of ownership, and results only from title. The opposite notion has, as I have said, arisen from a fanciful application of the doctrine oí improvement rights, to a possession begun and continued in injury and wrong; but with what shew of reason will readily be seen. From an early period, an improvement on the land has, by the custom of the land office, been a means of acquiring title from the State; and was, at one time actually prescribed by positive law, as a condition precedent to every grant. It was thought good policy to hold out the public lands for sale, on terms that enabled any one who chose to enter and improve, to acquire a right of preemption to a definite quantity, which, as soon as it was ascertained by a survey, became the property, and was considered to be in the rightful possession of the improver, who having closed with the terms of the State, and thus come in under an implied contract of sale, acquired an interest attended with all the incidents of property. But this was peculiar to the lands of the State. What right has an intruder to enter on my land, which is not up for sale on any terms, and insist that his trespass shall impart to it, qualities which result only from the inception of a title under an implied contract ? If he cannot acquire a direct right to the land by his improvement, how can he, for any purpose, assume the character of an improver, and, by qualities peculiar to it, affect my title through the Statute of Limitations. The truth is, that the statute was never intended as a means of acquiring title, or as an encouragement to people to enter on each others land with a view to hold it; but to compel them to decide their contro1 versies while transactions are recent and the evidence of them is attainable: and there its operation in protecting a possession under a bad title, or no title at all, is but a consc *139 quence of the object of its enactment, and not the object itself. Why then should a trespasser be so far favoured as to .enable him, by construction, to extend his possession beyond the immediate subject of the trespass ? Negligence in prosecuting, cannot £e imputed to the owner, except as to the very part withheld from him; for I do not know that there is such a thing as a constructive disseisin in favour of the disseisor, although the disseisee may sometimes elect to consider himself disseised or not at his option. If the operation of a trespass may be enlarged by construction, how far may it extend ? A number of warrants are sometimes laid together by an outline without running the dividing lines :—would an intruder gain possession of all the land included ; or of how much ? In answer to this, I have heard it said he could acquire the possession of no more than if the land were vacant: and thus we always find the argument recurring to the doctrine of improvement. What hardship is there in refusing to permit an intruder on appropriated land, who cannot acquire a right to the soil, to acquire the incidents of such a right? It has been said that as the whole territory at first belonged to the State, which necessarily is the source of all title, and that as there is still a considerable portion of vacant land which may be acquired by improvement, a settler has a right to treat all land as vacant, while the title of the owner is not asserted by acts of ownership, but is suffered to remain dormant. I cannot see the justice of that; the owner is bound by no moral obligation to use his property in a particular way, or at all; and as to ignorance of prior appropriation, it is only requisite to answer, that if the evidence of survey be notice to prevent a settler from acquiring title by direct means, it ought to be sufficient to preclude him acquiring it indirectly. If, when the owner of an office title has done every act which the law deems to be of sufficient notoriety to apprise subsequent applicants or settlers that the land is appropriated, enough has still not been done, the fault is in the law and not in the man; and therefore a settler entering, even by mistake, ought not to complain that he who is in' no default, is not compelled to bear the whole loss, when' he himself might, by a little more than ordinary circumspection, have avoided the loss altogether. But where the owner resides on a part of the tract, although the danger of misap *140 prehension may be less, the principles of law are precisely the same. The owner of unseated land has a constructive possession which can be divested only by an actual possession inconsistent with it, and where the owner is in actual possession of a part, he has no more than constructive possession of the rest. Now the reason of a rule universally established and acquiesced in, that where.both parties live on the land, there is a.mixed possession of whatever is not exclusively occupied by either, which shall be esteemed that of him who has the right, is, that such mixed possession is only constructive as it relates to either party, and of no higher grade than that which it would otherwise displace. As, therefore, there is the same constructive possession of the part not actually occupied by either party, whether the owner reside on a part of the land or not, his being entirely out of actual possession is a circumstance that can have no operation against him. The matter then stands precisely on the grounds of an interference of surveys, where it is conceded the second survey will not divest the constructive possession gained by the first. But it is contended that where the party setting up the statute resides on the portion of the landineluded by the interfering lines, he shall be taken to be in the actual possession of the whole of it. If, however, he can acquire constructive possession neither by an adverse survey, nor by residence on a part, I cannot discover how he may acquire it by any peculiar operation of both together. The principle that there is no constructive possession against the owner is universal and applicable to all cases. The very point has never before been formally decided by this Court 5 but an opinion in favour of the principle now established has, more than once, been intimated.
On the other hand, as there can be no constructive possession in favour of the trespasser, his actual possession, can be divested only by an entry into the part occupied by him j for ah entry into the rest would be an occupancy of what was sufficiently in the owner’s possession before. Where indeed there is no actual possession in any one, but the freehold, although of several distinct parcels, is by law in him that enters, an entry into parcel, vests the possession of the whole. Co. Lit. 15 b. But, where there is an actual adverse possession, the governing principle seems to be, that there must be *141 an entry into the freehold of each several disseisor; as where the seisin acquired by ousters committed by a number is several, and respectively confined to the portions acquired by each ; or where there is but one disseisor who lets a part for life, an entry into parcel will not be an entry into the whole'; although in the last case it would be different if the lease were only for years ; for there would still be but one tenant of the freehold. Fin. Entry B.pl. 1. 6. 21. Co. Lit. 252 b. Where, therefore, there is an actual possession of a part, a survey of the whole will not necessarily be an entry to divest such possession ; because the acts of ownership thus exercised under a claim of right, may take place on what was in possession of the owner before ; but if in making the survey he necessarily passes over and exercises' acts of ownership on the smallest portion of what is in possession of the wrongdoer, I have no difficulty in saying it will be a good entry to avoid the Statute of Limitations as to the whole. As to every other part of the case, I fully concur with what has already been said.
Duncan J.
—Thiscase and several others, depending on the Act of Limitations, have laid~over,-to give the Court an opportunity of conferring and giving a construction to an Act, out of which so many important questions have grown. I had been consulted on this title, and will avoid -giving an opinion on the merits of the conflicting claims, and confine myself to one abstract question of law, and consider, « how far the Act protects one who has entered on a tract of land duly surveyed, and has resided within. the lines of the survey more than twenty-one years, against the rightful owner.” Had there been a difference of opinion between the Judges who have just delivered the judgment, I would not consider myself at liberty to give an opinion, that would turn, the scale ; but as they agree, and it is very desirable that the question'should be considered in a full Court, I have yielded to the wishes of the Chief Justice, and my brother Gibson, in expressing my sentiments. ■
While at the bar, I have looked forward to the time, when this question would become one of great and serious importance, and had considered it with some care ; and since, with the most anxious attention. It has been attempted to involve it with the right of settlement. This right rests on a *142 solid foundation, not now to be shaken j and is to be traced to a very early period of the province. Whatever may have been the moving consideration with the proprietaries, it is certain, that they gave a preference to settlers on their unappropriated lands. This usage grew into a right of preemption, recognised by them, and by their officers, and was sanctioned by many judicial decisions, prior to the revolution. This usage was well understood, and has been defined by positive law. But neither the usage, nor the law, gave any sanction to an entry into lands which had before been disposed of. The lands which were open to settlement, were vacant, unappropriated lands. After appropriation, neither the proprietaries,, nor the State, had power to dispose of them again. Where there had been a previous disposition, the settler could gain no right of preemption. No one could claim a preemption right to that, which had already been, sold. The man who has obtained a legal survey, has not only acquired a right to, but possession of, all the lands within his survey; for it is a principle of the common law, that the possession and the right go together. The owner is never deemed out of possession, until another has obtained an adverse possession, where the possession is vacant. Trespass, which is a possessory action, will lie against a wrong doer; it is the close of him who has the right, Chitt. Plead. 74. This principle of the common law prevails in all the States of the Union, where the question has been agitated. In New Tork it has often been decided, that trespass will lie by the owner against the intruder into wild and uncultivated lands. 3 Johns. 265. 9 Johns. 315. 11 Johns. 385. 12 Johns. 184. 15 Johns. 118. And in Massachussets, Proprietaries of Kennebeck v. Call, a survey was held to give the owner such possession as would support the action of trespass, though he may elect to be disseised, 6 Mass. 484, and bring his ejectment; yet the act of entry does not amount to a disseisin. And in this State, in Burns v. Swift, 2 Serg. & Rawle, 436, it was determined, that the law casts the possession on the owner of a survey returned, of all the land contained within it.
Seisin and possession continue in the owner, until he is disseised ; and no farther is the possession lost, than of that of which he is actually disseised. This is a doctrine of law *143 familiar to those acquainted with its first rudiments. Possession and the right are preserved together. The rightful owner, in presumption of law, is in the constant possession, until that possession is adversely interrupted and exclusively possessed by another. A wrongful possession cannot be extended by construction ; constructive possession always accompanies the right. It is a contradiction in terms, that a man by wrong, should have any right, and that this right, by wrong should be extended by construction. There cannot be two conflicting constructive possessions, one in the owner and the other in the trespasser. The right always draws to it the possession, and it there remains, until seised by the wrong doer, whose possession is strictly possessio pedis; who must necessarily be confined to what he has grasped, his real and actual possession. Beyond that, no length of time will protect him; because beyond that, the owner’s possession has never been changed; it always is, in contemplation of law, continued in him. These are the dictates of common sense, of common justice, and of the common law. Did they need authority to support them, authorities abound in the decision of the Courts of the several States, and of the Supreme Court of the United States. In New York, I refer to 1 Johns. 150. 2 Johns. 230. 8 Johns. 263. 9 Johns. 381. 11 Johns. 385. 12 Johns. 184. 16 Johns. 293. In. Connecticut to 2 Day, 498. In Massachussets, to 1 Mass, 483. 4 Mass. 416 ; in the first of which cases, the Court unanimously declared, “that in order to divest the owner of that possession, which the law had cast upon him, there must be an actual occupation, to the exclusion of the rightful owner; and that to extend the principle relative to adverse possession, beyond the case of an actual, visible, and consequently exclusive possession, would be of the most dangerous consequence, and authorise trespasses by law.” In Maryland, to Ringgold's Lessee v. Cheney, 4 Hall’s Law Journal, 128, andj to Davidson's Lessee v. Beatty, 3 Harris & M'Henry, 625 ; where' the law is distinctly laid down, that where a person claims by possession only, without shewing any title, he must shew an exclusive adverse possession by inclosure, and his claim cannot extend beyond his inclosure. In Virginia, to Clay v. White, 1 Munf. 73 ; where the patent was held to be the symbol of possession, and any person entering into that posses *144 sion, must be a trespasser; for the patent, ipso facto, confers seisin, because, as was said by Judge Tucker, it is founded on an actual survey of the '.land ; and J udge Roane gives number of instances, where livery of seisin is dispensed with, and actual corporeal possession, on the ground that acts equal notoriety ought to have an equal and similar effect; áhd observes that the reason holds strongly in a new country, where proof of actual possession might be difficult, and where in some sense, a corporeal investiture has already been made by the entry and survey. In South Carolina, to Rochel v. Holmes, 2 Bay, 425 ; where it is said, that adverse possession is never presumed to defeat a grant; it must be actually proved and shewn to rebut a prior title, in the same manner and degree of precision, as the plaintiff must shew a clear title in him, before he can recover. The same principle was enforced in the Circuit Court of the United States, for this district, in Pott’s Lessee v. Gilbert, 1 Peters’s Reports. In this State, to Cluggage v. the Lessee of Duncan, 1 Serg. & Rawle, 111. The opinion of the Court below, was, that the Act was a bar to all lands included within fence and no more. This Court pronounced that opinion to be right, the ChieeJus-TICE observing that Cluggage had no survey, and therefore there was nothing to which he could refer, but his inclosure. And lastly, to the decisions of the Supreme Court of the United States, in Green v. Little and another, 8 Cranch, 280. It was there held, that seisin may either be by a possessio pedis, or by construction of law. The constructive seisin indeed, is sufficient for all the purposes of action or legal intendment j and Mr. Justice Story in giving the opinion of the Court, says, “ we are entirely satisfied, that a conveyance of wild land, gives a constructive seisin in deed to the grantee, and attaches to him all the legal remedies of the estate and going on to another question, put by the Court below, observes, that “ the(first patentee had the better legal title, and his seisin presently, by virtue of the patent, gave him the best right to the whole land; a fortiori, he must have the best right to the land not included in the actual close of the second patentee; for by construction of law, he has the eldest seisin, as well as the eldestpatent.” And in Barr v. Gratz’s heirs, 4 Wheat. 213, the clear and broad principle is established, that when an entry is made without title, the dis *145 seisin is limited to the actual occupancy, and that a patent issued for vacant land, by operation of law, vests the constructive, actual possession of the whole in the patentee, and consequently, so far as actual adverse occupation extended, did the statute run, and no farther. It follows that an adverse possession is always negatived, where the party claiming title has-never, in contemplation of law, been out of possession, Adams’s Eject. 47 : that there must be a disseisin, and that strictly proved, for the statute never runs against a man, until he is actually ousted. Runn. Eject. 61. If these are the doctrines of law, the right conferred by twenty-one years possession, where the entry is without colour of title, which every entry into lands duly surveyed is, must not only be adverse, but marked by definite boundaries : an actual occupancy ; a real inclosure ; definite and positive ; notorious and exclusive. The question is free from all embarrassment on the ground of right by settlement. The misconception has arisen from confounding this right with the-extent of possession. The inquiry is not on the right of the parties. The defence on limitation, supposes the absence of right in the parties setting it up. One who has no settlement right, has nothing but a naked possession. For he who eriters on the appropriated land of'another, enters without co-lour of title, as much as if he had entered into an unoccupied house, or an uninclosed city lot. The law knows no difference. Courts can make-no distinction. The surveyed lands of a man, situated upon the Susquehanna, are held by the same tenure, secured by the same laws, as lots in the city of Philadelphia; the rights are the same, whether the possession be rural or urban ; on the Delaware, or on the Alleghany.
Against this uniform train of decisions of our own Courts, the highest tribunals of justice in the several States, and of the Supreme Court of the United States, there cannot Be found one solitary decision. It would be a harsh construction of a statute made for quieting possession, where the evidence of title might, from lapse .of time, be out of the power of the possessor, and not for the encouragment of intrusion, to.extend its protection beyond the actual possession, where the entry is without colour of title.
If this wm not the law, a trespasser- by entering and cutting down a few logs for a cabin, would acquire the posses *146 sion of many hundred acres—nay, more, by the bare corn» mission of a trespass, on a corner of several adjoining tracts of unoccupied land, would gain the possession of 400 acres, his choice of the whole.
We can easily understand, what is meant by colour of title» There may be, there too often are, several office rights for the same tract of land. The holder of the younger enters ; this is under colour of title. So several may claim title under the same original grant. All these enter under colour of title, and the difference is this ; “ where one enters under co-lour of title, his possession is co-extensvoe with his title ; but where one enters without any colour of title, his seisin is confined to his actual possession.” Judges of high character have, I know, entertained contrary opinions, and have -decided that no length of time will give a right to him who enters without colour of title. But on much reflection my own judgment is satisfied, that a possession so taken and continued for twenty-one years, by actual occupation and inclosure, will bar the entry of the rightful owner, and confer a right on the possessor, subject to the rights of the State for the purchase money ; but that such possession is not by construction to be extended to other lands, part of the same survey; because the owner of the survey in contemplation of law, remains in the possession of every part that he is not actually excluded from by the occupation of another.
There is no solid reason to support the position, “ that one entering without colour of title on a surveyed tract in order to define his possession, can resort to the limits and bounds of the tract on which he has settled.” See Judge Washington’s opinion, Potts’s Lessee v. Gilbert. His entry has no connection with these lines, the existence of which gives him notice that the land was not vacant. The constructive possession by the lines of a survey is, where the party claims title in virtue of such lines, and this title forms his right or colour of title. But where one enters disclaiming these lines, treating them as forming no evidence of title in any one, and enters into the possession as of vacant unsurveyed lands, he cannot adopt them for the purpose of stretching his possession, while he disavows all claim under them. These lines give him notice that the land is not vacant. He enters with full knowledge that he can acquire nothing b>y settlement right. *147 He may fix his eyes ón the lines of another ; he may set his heart upon the whole tract; but nothing can make it his, but purchase from the owner, or an actual occupation by indosure for twenty-one years of all circumscribed within the lines : for the owner, in contemplation of law, and. for every legal purpose, continues in the possession of every part not so occupied and inclosed.
Judgment-reversed and a venire facias de novo awarded.