City of St. Louis v. Gorman.

CITY OF ST. LOUIS, Plaintiff in Error, v. GORMAN, Defendant in Error. *

1. Where the officers of a municipal corporation, without authority, assess against a person for taxation land belonging to the corporation, and collect taxes thereon, and return the same as delinquent for nonpayment of taxes, buy the same at the tax sale and convey the same upon redemption, the corporation will not be estopped, by these acts of her officers and agents, to claim the property as her own.
2. The adverse possession of a disseizor, or of one who enters without right and retains possession by wrong, can not extend beyond the limits of his actual occupancy.

* The opinion of the court in this cause is also applicable to the case of City of St. Louis v. Keitley, decided at this term of the court.—[REP.

| 29 | 593 |
| 108 | 350 |
| 29 | 593 |
| 114 | 253 |
| 29 | 593 |
| 121 | 537 |
| 29 | 593 |
| 164 | 412 |
| 29 | 593 |
| e169 | ¹613 |
| 29 | 593 |
| 173 | 491 |

3. To constitute color of title some act must have been done conferring some title, good or bad, to a parcel of land of definite extent; a mere disseizor can not resort to the metes and bounds of the tract upon which he wrongfully enters.

4. If a person die in adverse possession of a tract of land and his son-in-law succeed him in the possession, the relation he sustains to the deceased will constitute such privity as will entitle him to connect his possession with that of the father-in-law so as to give him the benefit of the latter's adverse possession.

### *Error to St. Louis Land Court.*

This was an action in the nature of an action of ejectment to recover possession of a tract of about sixty acres of land lying within the survey of the common of the city of St. Louis. The land sued for embraces that portion (except a small parcel sued for in the case of St. Louis v. Keitley) of a tract of two by forty arpens lying within the commons of St. Louis. The plaintiff relied upon her commons title, and adduced in evidence various acts of the legislature of Missouri authorizing her to deal with, dispose of, and control her common ; also various ordinances of the city from 1835 to 1856, showing the action of the city with respect to her commons.

The defendant introduced in evidence, against the objection of plaintiff, De Ward's map of St. Louis common, upon which the Durand claim as laid down by De Ward was marked out. The defendant also introduced in evidence, against the objection of plaintiff, various tax receipts, tax deeds, certificates of purchase and certificates of redemption, and redemption deeds. From these it appeared, among other things, that in the year 1845, and afterwards, the eastern portion of the tract in dispute—that within the city limits— was assessed for taxation against "Nicholas Durand," "Durand claim," "Durand's heirs," "James Gorman." In 1845 John Corcoran, as shown by tax receipt, paid taxes. The land was returned delinquent for taxes of 1846 and sold to John Corcoran, who received comptroller's deed. Corcoran died in 1848 leaving several children. The land

was returned delinquent for the taxes of the year 1848, was purchased by the city, and redeemed by and conveyed to James Gorman. There were various tax receipts showing payment of taxes by James Gorman since 1851 and 1852. There was no attempt to show title in or under Durand. Evidence was introduced with a view to show that James Gorman and his father-in-law, Corcoran, had had adverse possession of the land sued for for more than twenty years before suit was brought.

The court, at the instance of the defendant, gave the following instructions: " 1. If the jury find from the evidence that before the year 1833 one Durand claimed the tract of two by forty arpens of which the premises in controversy are a part; that the boundaries thereof were defined, and the tract mapped out by the plaintiff upon a plat of the survey of the common of the city of St. Louis as a piece of ground claimed under Durand adversely to the city; and that this plat of survey was made as early as 1835 or 1836; that until the year 1843 the said tract was wholly without the chartered limits of the city of St. Louis; that in 1843 the charter of said city was altered so as to include within the city limits so much of said tract as lay to the east of Second Carondelet avenue; that thereupon the City of St. Louis caused to be assessed to the defendant or those under whom he claims so much of said tract as lay within the city, describing the same as the property of the defendant or those under whom he claims, and caused the taxes due on said land to be collected and paid into the city treasury; and if the jury shall further find that the possession and claim of the defendant as to the land within the city limits was of the same nature and character with his possession and claim to the remainder of the tract outside of those limits, then this is evidence, not merely of the possession and claim of defendant to the whole of the tract outside as well as inside of the city limits, but of the knowledge and acquiescence of said plaintiff in such possession and claim by the defendant. 2. Neither occupation, cultivation nor residence will be necessary to con-

stitute actual possession of a tract of land when the property is so situated as not to admit of any permanent, useful improvement, and the continued claim of the party seeking the protection has been evidenced and accompanied by public, unequivocal and continued acts of ownership and control such as he would naturally exercise over property which belonged to him, and would not exercise over property which did not so belong; and if the jury find in this case that the defendant and those under whom he claims have continuously and uninterruptedly exercised over the land in controversy such public, unequivocal and notorious acts of ownership and control for the space of twenty years before the commencement by the plaintiff of any legal steps to dispossess him or them, and that, during the whole of that period, the defendant and those under whom he claims have denied the title of the plaintiff and claimed the land as their own, then the plaintiff can not recover in this action. 3. The jury is instructed that to constitute an adverse possession of a tract of land there need not be an enclosure, building, or other improvements. It is enough if there be exercised over the property visible and notorious acts of ownership after an entry under claim and color of title. An entry is by color of title when it is made under a real and not a pretended claim to a title held by another. The term itself implies that the party so entering has not the true title, but the law regards him as having color of title if he claims and believes that the land in good faith belongs to him and enters into possession accordingly. If after so entering he and those claiming under him continue for twenty years in the exclusive enjoyment of the tract and in the exercise of open and notorious acts of ownership thereon, he and they are protected by adverse possession and the statute of limitation against all the world. 4. The plaintiff can not recover against the defendant any part of the land in controversy which lies east of the city's western line as it stood in 1845 and following, as the same is described in the tax receipt and deed of the city read in evidence. 5. If the jury find from

the evidence that for more than twenty years before the commencement of this suit the tract of two by forty arpens of land, of which the premises in controversy are a part, was recognized and mapped out by the plaintiff as a distinct and definite tract of land within the city commons claimed adversely; that in 1833 or 1834 one John Corcoran, claiming to be the owner of said tract of two by forty arpens, entered upon the same and built a dwelling-house, and enclosed and cultivated a garden of several acres adjoining thereto, upon the eastern part of said tract, and occupied said house as his dwelling; that the remainder of said tract was then mostly covered by stone quarries and not susceptible of any permament useful improvement; that said Corcoran, at the time of said entry, took possession of said quarries, and exercised over the remainder of the tract open, visible and notorious acts of ownership and control, excluding from every part of the tract all the persons who did not hold the same under him; that said claim, occupation and acts of ownership and exclusive control were by said John Corcoran and those claiming under him continued for twenty years before the commencement of any legal steps by the plaintiff to dispossess the said Corcoran and those claiming under him, then they must find for the defendant."

The plaintiff suffered a nonsuit, with leave, &c.

*Glover & Richardson*, and *S. Simmons*, for plaintiff in error.

I. All the evidence introduced concerning the tax deeds and tax receipts was improperly admitted, and all the defendant's instructions grounded on these papers were erroneous. Neither of said supposed deeds was an estoppel on the plaintiff; neither was the act a deed of the corporation. No law or ordinance authorized them. The land was confirmed to and belonged to the city. No city officer could lawfully assess city property for taxes. The assessment was void; all the subsequent steps also were void. (8 Ohio, 187; 13 Louis. 205; 34 Maine, 89; 3 Mass. 419; 1 Bibb, 295; 36

Maine, 433.) Durand never had any title. No title could consequently pass to the purchaser at the tax sale. It is not attempted to be shown that the forms of law were complied with. Officers of municipal corporations are special agents, acting under special instructions contained in ordinances. Those who deal with them must take notice of these ordinances. The comptroller had no power which did not appear on the face of the ordinances. A corporation speaks or acts only in the mode prescribed by law. (2 Cranch, 167.) No corporation is bound by any unlawful act of its officers though done *colore officii*. (19 Pick. 511; 13 B. Monr. 563; 16 Shepl. 29; 3 Day, 495; 18 Mo. 227; 1 Hill, 551; 14 Verm. 311; 25 Mo. 503.) The deed to Gorman is void.

II. Corcoran entered without title or color of title. He is limited to his actual occupancy. His possession was adverse only to the extent of his actual enclosures. (Angel on Lim. 420; Adams on Eject. 582.) There is no constructive possession in favor of a trespasser. (Miller v. Shaw, 7 S. & R. 136.) The possession must be marked by definite boundaries. (Adams' Eject. 572; 10 Johns. 477; 19 Penn. 262; 10 S. & R. 303.) It must continue the same in point of locality; must not be a roving possession. Defendant can not connect a part that he has occupied for twenty years with a part that he has occupied for a less time. (27 Mo. 410, 415.) The Durand claim extended east of the commons; and conceding that his fence encroached upon the common, the city was constructively in possession of the residue of the tract. The city had actual possession of parts of the commons. (27 Mo. 410, 415; Angel on Lim. 432; 10 Mo. 769; Beesly, 461; 1 Hill., S. C. 135.) The defendant showed no privity with Corcoran. The succession must be transmitted by contract or operation of law. (27 Mo. 203; 23 Mo. 336; 5 Maryl. 257.) The court erred in giving the third instruction. The definition of color of title is incorrect. What is color of title is a matter of law. (18 How. 59.) There was no evidence authorizing the court to say there was any color of title exhibited by the defendant.

There is no evidence that the entry was made under a real claim. It does not appear that defendant or Corcoran claimed in any matter whatever under Durand, or any other person. There must be some appearance of title. (1 Cow. 285; 18 How. 56; 29 Barb. 323; 10 Barb. 256; 15 Ill. 73; 2 Smith L. C. 484.) De Ward's map was not color of title. The defendant might with as much propriety claim that the extent of his claim was bounded by the exterior lines of the survey of commons. (3 Barr, 214; Adams' Eject. 582.) That map was not made twenty years before the bringing of suit. There was nothing but a wandering, vagrant possession of a few sink-holes in different parts of the tracts for the purpose of quarrying rock. The plaintiff's instructions should have been given.

*Gantt & Gibson*, for defendant in error.

I. The instructions refused were properly refused. The instructions given for the defendant were correct. The city can not assert title in herself to land which for a long time it has caused to be assessed as the property of a private individual, for which it has collected taxes; which it has caused to be returned delinquent for the nonpayment of taxes, and for which, after purchasing it at tax sale, it has executed a deed according to ordinance to the claimant or person to whom it was so assessed. These acts constitute an estoppel *in pais*.

II. The instructions given by the court on the subject of the statute of limitations and adverse possession furnish a correct declaration of the law on that head.

SCOTT, Judge, delivered the opinion of the court.

The city being the owner of the land assessed and sold for taxes to the defendant through the instrumentality of her officers, it is maintained by him that she is estopped to deny the regularity of the proceedings by which he claims title.

The city is a body corporate, clothed with extensive powers for the management of her municipal affairs. She can only

act through her officers and agents ; and if those officers, in violation of her ordinances, do unauthorized acts to her prejudice, it would be hard that she should be bound by them. This, surely, is not the law in relation to natural persons who act through their agents. If the agent exceeds his authority, his constituent is not bound. Those dealing with agents must look to the extent of their power. Agencies are indispensable in the transaction of the business of men ; and, if those who employ them are estopped to deny the validity of the acts performed by them, commerce must be restrained within very inconvenient, if not ruinous, bounds. The State of Missouri owns a tobacco warehouse in St. Louis ; if the state officers should assess that property in the name of an individual, and sell it for the taxes, would any one maintain that she was estopped to deny the validity of a title claimed under such a sale ? The state has delegated to St. Louis the powers necessary for her municipal government, thus imposing on her an obligation that would otherwise devolve on the state. The city, in the discharge of this duty, is compelled to act by officers. Now, if the state, acting through her officers, is not bound by their unauthorized acts, we can see no reason why the city, in the exercise of functions pertaining to the state and for the performance of which she is substituted in the place of the state, should not stand, in relation to the agents she may employ, on the same ground that the state would to her officers.

We must all see the numberless frauds the sanctioning of the principle insisted on would produce. The argument confounds the city with her officers and assumes that they are the city. If an officer of the city, in violation of her ordinances, makes a contract with an individual, is the city bound by such a contract ? Must not those who contract with the officers employed by the city see that the officers, with whom they are contracting, conduct themselves in pursuance to law ? The defendant, claiming that he has obtained the title of the city to a portion of her commons through her officers, is compelled to show that these officers, in assuming to

pass a title, acted in pursuance to the ordinances prescribed for the regulation of their conduct on such occasions. This is a well established rule in regard to all those deriving title to land by means of a sale for the taxes. The bare statement of the law in relation to estoppels *in pais* is sufficient to show that it can not apply to transactions where there is the interposition of third persons as agents acting in violation of their authority. It has thus been stated : " The rule of law is clear, that where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is precluded from averring against the latter a different state of things as existing at the same time." (Pickard v. Sears, 6 Adol. & Ellis, 494.) The same judge more broadly expressed the rule, on another occasion, thus : " A party, who negligently or carelessly stands by and allows another to contract on the faith and understanding of a fact which he can contradict, can not afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving. (Greggs v. Wells, 10 Adol. & Ellis, 90.)

We do not see the ground on which it can be maintained that Corcoran, under whom the defendant claims, had any color of title. The evidence relied on would just as well show that he had a color of title to all the land unoccupied within the outboundary of the commons. It is not pretended that Corcoran entered under Durand, or that there was any privity in any respect between them. Because the Durand tract, as marked down on the plat, was of certain dimensions and more sizeable than the entire commons, it seems to have been deemed more politic to make it the evidence of the extent of the color of title. This is the first attempt here to make the boundaries claimed by the owner of the land evidence of color of title in an intruder. The effect of this is to do away with all the law in relation to color of title, and in every case make the boundary of the person, upon whom the trespass is committed, evidence of the extent of the claim of

the trespasser. Because the city had, by her officers, laid down the claim of Durand on the plat of the commons, there is no principle by which the defendant can claim any benefit from such act, as he does not claim under Durand nor in privity with him. In the case of Pitts v. Gilbert, 3 Wash. C. C. 478, Judge Washington said: " It is a clear principle of law that the right acquired by the adverse possession of a disseizor, or of one who enters or retains possession by wrong, can never extend beyond the limits of the particular spot to which his occupation is confined. If he could go beyond these, there would exist no other to circumscribe his claim. He can not resort to the metes and bounds of the tract upon which he has settled, because the legal possession of the owner continues unaffected by the tortuous entry, except so far as the actual adverse possession has disturbed it."

The defendant cited a remark made by Judge Gibson in the case of McColl v. Neely, 3 Watts, 69, that he was " not aware that the definition of a colorable title, or, as it is expressed more frequently, color of title, had ever been attempted. The words do not necessarily import the accompaniment of the usual documentary evidence." But general expressions in an opinion must be taken with reference to the facts of the case in which they are made; and the application of this remark makes it appear that the case to which reference has been made, so far from being a decision in support of the proposition that there is a color of title in the case before us, its tendency is the other way, and it may be used to show that there is no color of title in the claim on which the defence to this action is made. Angel says that " where a deed, relied on as giving a color of title, contains no description of the land, although it is of no moment that the title is defective, yet if no land is described nothing can pass, and therefore such a deed can not be the foundation of an available adverse possession beyond the actual improvement." (Angel on Lim. 440.) When we say a person has color of title, whatever may be the meaning of the phrase, we express the idea, at least, that some act has been previously done, or

some event transpired by which some title, good or bad, to a parcel of land of definite extent has been conveyed to him. Can the marking of the claim of a stranger upon the plat of his land by the owner confer a color of title on one who has [no] privity in estate, in contract or in law, with the title of the stranger?

Cases without number might be cited in support of the doctrine that the right acquired by the adverse possession of a disseizor, or of one who enters or retains possession by wrong, can never extend beyond the limits of the actual occupancy. There is one in which this subject is very ably treated, and the law so luminously stated by the judges that it should alone suffice. The case to which reference is made is that of Muller and others v. Shaw, 7 Serg. & Rawle, 129. To the same purpose might be cited the case of Barr v. Gratz, 4 Whea. 224.

As we maintain that Corcoran, under whom the defendant claims, had no color of title, we do not deem it necessary to determine the question whether the possession of a part of her common by the city, in the manner stated in the record, excluded any constructive possession of the defendant, as, he having no color of title, his possession could not extend beyond the limits of his actual occupation.

On the general question of adverse possession, as the case now stands on a nonsuit, and as the jury has never passed upon the evidence in relation to that matter, it is not the usual course here, under such a state of things, to express an opinion upon the facts. We suppose the plaintiff took a nonsuit in consequence of the instruction in relation to the effect of a sale for taxes by the city officers. Although this instruction only affected a part of the land in the controversy, it was sufficient to warrant such a course, as otherwise the plaintiff must have had a verdict against her for so much of the lot as was affected by the instruction. The case of Ewing v. Burnett, 11 Pet. 41, and Draper v. Shoot, 25 Mo. 197, relied upon by the defendant, were very different in their circumstances from that now before us. By taking the law of

limitations, as applied to one state of facts, and endeavoring to apply it to a condition of things wholly different, we will never arrive at its correct administration. Surely a man, who has no title nor even color of title to land, who knows that he is wrongfully endeavoring to obtain it by adverse possession, should give to the world the most unequivocal evidence of his intention. It will be for the jury to determine with what intent the stone quarries were worked, and whether the evidence of the adverse possession of the defendant may not be reconciled with the declaration of the plaintiff's witness, that Corcoran told him that he claimed no part of the commons of the city.

We do not see the point of the defendant's first instruction. From the view we take of this case the defendant's instructions were erroneous.

If Corcoran died in possession, his possession would descend on his children; and if the defendant had married one of them, that marriage would constitute such a privity as would entitle him to connect his possession with that of his wife's father, so as to give him the benefit of the adverse possession of the father.

The judgment is reversed and the case remanded. The other judges concur.