The opinion of the court was delivered by
Duncan J.
The claims of both parties arise from the same source, settlement on a piece of land of 160 acres, supposed to have remained unappropriated. They depended not on priority of settlement only, but an adjustment of boundaries, and an agreement for consentible lines; a very usual and useful course pursued by original settlérs, and which courts of justice have always countenanced, on this imperfect and inchoate right. It was on the existence and validity of such agreement, the merits of the controversy between these parties depended. The introduction of John Coxe’s claim, under the location and survey returned of Jane Little, was a collateral matter; neither party claimed under it; both declined it; and in ejectment by Coxe’s executors against the Gildqys, many yeax-s ago, there was a verdict for the defendants, since which there have been no further proceedings. It is a general rule in ejectment, £hat the defendant may show an outstanding title in a third person, and and so protect his possession; but.it must be a subsisting one. It subsists wherever the proprietor could sustain an ejectment. And there are exceptions to this rule; landlord and tenant, and other subsisting relations between the plaintiff and the defendant, as trustee and cestui que trust. So, it is a rule, that one having a prior possession, may l’ecover in ejectment. 2 Saund, 112. So, where one comes into possession under a title from B., he cannot gainsay that title against a plaintiff who claims by the same title, by setting up a prior grant in a third person. 10 Johns. 292. So, one who is under a contract for sale, is quasi tenant, and cannot object, that the vended had no title in ejectment against him by the *340 vended’. 18 Jo/ins. 94.There is another principle,that where the plaintiff and defendant deduce their title from the same source, it is not necessary to go further back than that source. I think this title of Coxe should have been left to the jury, with the instruction, that if they found a scrambling occupation, by Watson and Gilday,and that for the sake of peace, they agreed to settle the boundaries, and the boundaries they thus agreed to, were ascertained by proof, then, Watson should not be permitted to set up Coxe’s outstanding title. Their possessory rights, and their controversies inter se, were to be deduced by ajusteomparison of their equitable pretences, and settlement of boundaries, and neither should call in a foreign title to defeat the other. The action itself, is but possessory, and the possession is alleged to be a mixed one, to be regulated by their own agreements. But I by no means agree to the doctrine of abandonment, or leaving it to a jury to presume an abandonment of a location surveyed and returned. Abandonment is a term very often mis-applied, and I know nothing more destructive pf the security of titles, than leaving it to a jury to presume an abandonment of such a title. Abandonment does not apply to such a case. A man may abandon his settlement, and that abandonment may be of such a cast, as that the court may decide it as a matter of law, independentof thestatutary provisionsof limtation, as to seven years; because continuity of actual residence and- possession, is the very vital principle of this right, and is a part of its legal definition. Hence it is determined, that settlements must not have the smallest cast of abandonment. The abandonment then, is not constructive, but absolute; a dereliction of the possession, which amounts to a surrender of the pre-emption right, unless this dereliction is accounted for by some extraordinary occurrence ,as being dispossessed by force, and an immediate prosecution of the right, or prosecution within some reasonable time, or being driven off by the public enemy. Where a location is not followed up by a survey in a reasonable time, this is constructive abandonment, and may be decided as matter of law by the court; and where there is an intervening i'ight before a survey, this imperfect right, and inception of title, may be considered as relinquished, or in other words, abandoned.
So, under particular circumstances, where a survey has been made andnotreturned, and no surveying fees paid; no act done by the owner; no money paid on the location, this might likewise be considered as an abandonment. This doctrine was essential to a new country, which, in the case of these imperfect rights, required an active pursuit, and this the law required. Where, after the presumed abandonment other rights have been fixed, this might be consided constructive abandonment, but where the survey was duly made, certainly where duly made and returned, this principle would not apply ; no one could be deceived, the land could not be considered as vacant and unoccupied, and any *341 neglect in perfecting the titlej was a matter solely between the proprietaries, (since the state) and the holder of the warrant or application, with which, persons who are not aggrieved had nothing to do. The state has extended the time of payment by law, and has passed laws for the recovery of the purchase money of land so held bv location and survey. A location with a survey returned, is as to*all the world but the state, in Pennsylvania, the legal title, with all the incidents of the legal title, and all the right and benefit- flowing from it. A man does not forfeit his title, where he has committed. no actual fraud against the tenant, either by not bringing suit, or resting after one verdict against him, if the delay was for a- less time than that prescribed by the act of limitations. To say that he would, is to set up a limitation contrary to the law. Delay is not fraud; it may be negligence, which the law permits, if not protracted beyond a prescribed period of twenty-one years. I do not see any other ground for presuming a fraud, than what arises from the delay in instituting the action, and there was no fraud in that. These principles governed in Wood’s Lessee v. Galbreath, 2 Yeates, 306, and in Cox v. Cromwell, 3 Binn. 114; and again, in White and another v. Kyle’s Lessee 1 Serg. & Rawle, 517, where two trials, verdicts and judgments in ejectment, and seventeen years acquiescence, were held not to be a bar. Such an acquiescence might be a bar where there was actual fraud committed by a party: as by encouraging a defendant to improve, by holding out to him a determination not to prosecute his claim'farther, or encouraging a stranger to buy. But mere delay could not’postpone; it must be some particular act of fraud, or fraudulent connivance. But the position of the court, “ that if the jury believe, that Jane Little neglected to pursue her claim from 1769, by making entry upon the land, occupying it, or paying the state for it, or in any other way claiming the land, as here (except the ejectment, which was brought years past, by the heirs of John Coxe, who claimed under Jane Little', and were defeated by the present claimants,) she has abandoned her claim, and the land would then return to the commonwealth, and be open to improvers,” has no foundation in law, and is in my view, pregnant with most mischievous consequences, removing the land marks of property. This is seating up a new limitation, contrary to positive law; and where the contracting parties, the state, and the applicant, have come to terms, with respect to payment; where the credit has been extended by acts of the legislature, and where in giving the extension, they had added.their own terms, by charging interest on interest after a certain period, to say, that not- . withstanding all this, the land reverted back to the state, where the state, has dispensed with the conditions of payment as to time, and still will grant the patent, and take a mortgage, payable by instalments for the security, would be a violation of the public faith, and contrary to their own positive enactments. What is *342 it to Giiday or Watson, whether Jane Little has paid her purchase money to the state or not ? It was a matter between the state and her,which the state has regulated by law,and on the non-payment, and non-settlement of the land, it does not become derelict, open to the first man who chooses to take possession of it. There was error in this part of the charge, for if the jury did not believe, that the plaintiff had made out his case, as to this amicable adjustment between him and the defendant, by this agreement respecting the lines, the defendant could show this subsisting title in Jane Little.
There was likewise error in admitting Mahoffy’s evidence, as to the testimony given by Reeder on a former trial; for though it be true, that if a witness, examined on a former trial between the same parties, and where the same point is in issue on a second trial or action, be since dead, what he swore on that former trial may be proved, by any one who heard him, yet this is evidence from necessity. The law of England is very strict, and requires that the person called upon to prove what a deceased witness said, should undertake to repeat precisely his very words, and not merely to swear to their effect. We have relaxed that strictness,' and admitted a witness who would undertake to give evidence of the substance; but in that, there must be no equivocation or ambiguity. The reason why such evidence is admitted at all, is because the parties to the suit are the same, the point in issue the same, and an opportunity was given for cross examination. If there was a cross examination, the witness should be prepared to state what that was, for the cross examination might have explained what he swore to, on the direct examination. He cannot recollect the questions that were put in the cross examination: he recollects there was a cross examination, but what it was, he has no recollection of.- This was but a partial account of what the first witness swore, and is a dangerous kind of evidence, on which no indictment for perjury would lie. The whole that was given in evidence on the point in issue to which he was examined, in the words of the deceased witness, or its whole substance, without garbling, the witness from his recollection must state, or he cannot be heard.
Judgment reversed, and a venire facias de novo awarded.