# Pfoutz *against* Steel.

In order to preserve a pre-emption right to land, a personal residence must be kept up and continued upon it until the purchase money be paid, a warrant obtained and survey made. To leave the land without the *animus revertendi* is a legal abandonment of it.

ERROR to the common pleas of *Tioga* county.

Ejectment by Leonard Pfoutz against Robert Steel, for a tract of ten acres of land.

The plaintiff's title was a warrant, in his own name, of the 11th of February 1831, and a survey of the 24th of March 1831.

The defendant's title was founded upon an actual settlement and residence on the land by John S. M'Kinley, as whose heir at law he claimed the land. M'Kinley died in 1818, and the defendant had the possession of the land until 1821, by himself and his tenants: from that time until the date of the plaintiff's warrant there was no person in the actual occupancy of the land: and the question was, whether this was not a legal abandonment of the pre-emption right of M'Kinley, so that the land was open for settlement or purchase by another. The jury, under the direction of the court below, gave a verdict for the defendant.

*Parsons*, for plaintiff in error, contended, that the conduct of the defendant was a legal abandonment of his title, and cited Watson *v.* Gilday, 11 *Serg. & Rawle* 340; Cluggage *v.* Duncan, 1 *Serg. & Rawle* 120; M'Laughlin *v.* Mayberry, 4 *Yeates* 534; Blaine *v.* Johnston, 3 *Binn.* 105.

II.—3 B

[Pfoutz v. Steel.]

*Williston* and *Cunningham,* for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—This action was instituted to recover the possession of ten acres of land.   On the trial of the cause in the common pleas, the plaintiff, in order to sustain his action, gave in evidence a warrant in his own name, bearing date the 11th day of February 1831, for ten acres, and describing accurately the land in question ; and a survey made thereon on the 24th of March 1831.   The defendant then attempted to establish a pre-emption right to the land by showing that in 1816 a John S. M'Kinley, a sister's son of the defendant, erected a small log house on it, in which he resided occasionally, being a single man and a shoemaker by trade, till May 1818, when he died unmarried, without issue, and without any known kindred nearer than the defendant ; though he told one of the witnesses, a few days before his death, that he had sisters living.   M'Kinley, in the course of the two years before his death, cleared and fenced about three acres of the land, upon which he raised corn, potatoes and beans.   Before his death, in his last sickness, he told one of the witnesses that he wished the defendant to have all his property ; that the defendant was the only friend he had in the country. M'Kinley, beside the land, had the tools of his trade and some little other personal property, which the defendant took possession of after his death, and paid some few debts of small amount owing by the deceased at the time of his death, together with the funeral expenses. The defendant also took charge of the land, and had it occupied by tenants, who resided upon it some part, perhaps the greater part of the time, to the spring of 1821 ; but from that time down until after the plaintiff had obtained his warrant and survey for it, no person resided upon it.   The house which had been put up on the land by M'Kinley, the only one that ever was on it before the plaintiff procured his warrant, was suffered to fall into ruin, and to become unfit for a dwelling.   The defendant, however, continued, after clearing and inclosing about three fourths of an acre in addition to what M'Kinley had cleared, to cultivate and keep up some kind of fencing around the whole of the cleared part of the land from 1821, the time at which his last tenant left it, till the 2d day of March 1831, when, after hearing that the plaintiff had got a warrant for the land, he put up a shanty upon it, in which he placed some old chairs and a lock upon the door for some time *to hold possession,* as he told the witness.   It also appeared from the evidence, that a large portion of the land was at times overflowed by the floods in a creek that passes by it: and that upon one occasion the last tenant who resided upon it was taken from it in a canoe.

Several errors have been assigned in this case, but it will be sufficient to decide the question whether it is indispensably requisite, in order to preserve a pre-emption right to land founded upon a settlement, that a personal residence should be kept up and continued

[Pfoutz v. Steel.]

upon it; because a *correct decision of this question* will determine the whole matter in controversy between the parties: for if continuity of such residence be necessary to give validity to a settlement, and to render it at all times effectual, the defendant has no title or right to hold the land in dispute; and the plaintiff's right under his warrant and survey must prevail.   Seeing the legislature have long since laid down a rule on the subject in terms so unambiguous and intelligible that the meaning of them cannot readily be mistaken, I must confess that I am not a little surprised that an appeal to this court to pronounce what the law is in relation to it should have become necessary.   The act of the 30th of December 1786 defines a settlement, and declares "that by a settlement shall be understood an actual *personal resident* settlement, with a manifest *intention of making* it a place of abode and the means of supporting a family, and *continued from time to time* unless interrupted by the *enemy,* or going into the *military service* of this country during the war."   From terms then the most express and unequivocal, we see that the act of assembly has made, as the late Mr Justice Duncan very correctly observes in Gilday *v.* Watson, 11 *Serg. & Rawle* 340, *" continuity* of *actual residence* and possession the very *vital principle* of this right and a part of its legal definition," so that continuity of possession alone is not sufficient, but there must likewise be a continuity of *actual personal residence.*   It is but an equitable claim to the land at best, and it has long since been established and ever held by the courts of this state that to give an improvement any equity *whatever,* it must not have the smallest cast of an abandonment. Lessee of Smith *v.* Brown, 1 *Yeates 515;* Sturgeon *v.* Waugh, 2 *Yeates* 478; Magens *v.* Smith, 4 *Binn.* 73.   This principle must be considered as being applicable to every ingredient necessary to the constitution of a complete and perfect settlement right, in order to preserve and keep it alive and in full force.   If the personal residence on the land be given up or abandoned, a continuance of the cultivation of the ground, and thus holding on to the possession of it, can avail nothing unless the act of assembly is to be entirely disregarded.   And where the personal residence has been relinquished for years, the question of abandonment in such case is not a question of *fact* to be left to the jury, but a question of *law* which must be decided by the court.   Whether the personal residence has been continued upon the land or discontinued is a question of *fact;* and if relinquished, how long? is likewise a question of *fact* to be decided by the jury: but whether a dereliction of it for years amounts to an abandonment of the right or not is a question of *law* upon which the court ought to decide and to give the jury a positive direction, as was done by the court of common pleas in Duncan's Lessee *v.* Cluggage, 1 *Serg. & Rawle* 111, which was afterwards affirmed upon a writ of error by this court.   The late chief justice in delivering his opinion in that case says, p. 120, 121, "abandonment is not in all cases a *matter of fact.*   It may be a conclusion of *law* from facts.   Where

[Pfoutz v. Steel.]

a man makes a settlement and leaves it for a *great* length of time, it does not signify for him to say that he keeps up his possession." So in Watson *v.* Gilday, 11 *Serg. & Rawle* 340, the late Mr Justice Duncan lays it down that " a man may abandon his settlement, and that abandonment may be of such a cast as that the court may decide it as *matter of law.*" . In the case then at bar it being clearly established by the defendant's own witnesses, and indeed not gainsaid by himself, that for the space of nearly ten years before, and immediately preceding the time that the plaintiff obtained his warrant for the land in dispute and had his survey made upon it, the defendant had no personal residence whatever, either by himself or by his tenants upon the land, it was clearly the duty of the court to have directed the jury that the defendant had shown no available right of any kind to the possession of it, and that the plaintiff was therefore entitled to recover it under his warrant and survey.

The court below would seem for a moment to have been aware that in ordinary cases generally a continuation of personal residence upon the land was necessary to maintain and preserve a settlement right in full force ; for in their answer to the second point, submitted by the counsel for the plaintiff, they admit that the possession must be kept up and continued for the purpose of making it a *permanent place of abode*, and the means of subsisting a family ; but how it could be made the place of *abode* without personal residence it is difficult to imagine, and I take it for granted that the court had no idea that such a thing was practicable, because they go on and add, " there may be an exception: if after a settlement had begun, from some unavoidable cause the land should be overflowed, so as to render it impossible to reside on the premises, the settler may live on an adjoining tract, and occupy the land without forfeiting his rights," and conclude their answer on this point by saying, "the jury will judge whether this is such case." Now this was clearly a misapprehension of the law in relation to this matter on the part of the court; for no such exception is to be found in the act of assembly, nor yet in any judicial construction of it. According to the express terms of the act nothing will excuse the settler from continuing a personal residence upon the land but an interruption by the enemy of the country, or his being called into the military service of it. Short intervals of non residence, such as may frequently happen between the going out of one tenant and the coming in of another, or a temporary absence on business, so that the *animus revertendi* exists, will not be considered a discontinuance of the personal residence, after it has been once fully completed. Nor will it be so considered where the settler or tenant is expelled from his residence on the land by private force, provided that he will within a reasonable time resort to proper means to have himself restored, but if he do not it may be considered an abandonment of his right. If he should happen to be compelled to quit his residence on the land from any extraordinary or occasional occurrence, such as the inundation of the land from

[Pfoutz v. Steel.]

the rising of the waters in a contiguous stream, he must return as early as convenient again to it, or otherwise it will be an abandonment of his settlement. And if the inundation should happen to be so frequent, or present so great a portion of the time, as to render the continuance of a personal residence upon the land unprofitable, or even impracticable, the settler has no alternative left, as I conceive, but to pay the purchase money, with the interest thereon due to the state for the land, and have his title to it perfected by a warrant and survey; otherwise, by relinquishing the personal residence in *fact*, no matter what his intention or his wish may be, he will lose his right of settlement. There is nothing hard nor unjust in this, for in paying the purchase money to the state he is only performing a duty which he is bound in equity, justice and law to perform. But as the state has an interest in having an actual personal residence upon as much of the land within her territory as possible, she has therefore been willing hitherto to grant indulgence for the payment of the purchase money, and to give the party a pre-emption right to the land, provided that, after having made a personal resident settlement upon it, he will continue it. But for the state to concede a right of any kind, either qualified or absolute, to one for land without having received either the benefit that arises from the payment of the purchase money, or enjoying that which arises from the continuance of a subsisting personal resident settlement upon it, is more than has ever been promised, and more than either courts or juries have any right to grant on her behalf. But the court, in their answer to the third and next point of the same counsel, still go further, and say that "had there been no *occupancy* of the land by the defendant, nor *residence* on the land since 1822, the court would declare as matter of law that there was an abandonment, but if there has been a continued occupancy of the premises down to the bringing of this suit, the court think it becomes a *matter of fact* for the jury to decide, whether Steele has abandoned his settlement." Thus clearly indicating their opinion to the jury, that as the defendant had continued to occupy the land in dispute down to the bringing of this suit, although he had confessedly relinquished all personal residence, and had had nothing of the kind upon it from 1822 (1821 the court ought to have said according to the testimony), that it was not an abandonment of his settlement *in law*, but that the jury must decide upon it as a *matter of fact*. In this, if the law be as I have stated it, of which I entertain no doubt, there is palpable error; I am at a loss to perceive upon what principle it was that the court say, if the occupation as well as the personal residence upon the land had been relinquished or not continued, that they would have declared it an abandonment of the settlement right as matter of law, and not declared it so for want of a continuance of the personal resident settlement, which is every thing in the constitution and preservation of such right, and the occupation of the land without it nothing in the eye of the law. It is by making a personal resident settlement

[Pfoutz v. Steel.]

upon the land in the first place that the right is created, and by the continuation alone of it in the next place can it be preserved. Possession of the land is necessarily included in a personal resident settlement upon it, and is merely an ingredient of it; of itself it gives no right to the land whatever, unless within a reasonable time it be followed by a personal residence upon it, and that afterwards continued from time to time until the legal title shall be obtained from the state. As possession or occupation then in law cannot of itself give any right to the land, it was the duty of the court below to have advised and charged the jury in this case, that all right which the defendant had by virtue of the settlement made upon the land at one time was gone and had ceased to exist, because the settlement itself, by force of which the right existed, had ceased to exist. In other words, the defendant, in the eye of the law, had abandoned it. Whether he discontinued the personal residence upon the land with the intention of relinquishing his right by settlement or not, can make no difference; the law pronounces it an abandonment of his right, just as it does in the case of an obligee who has released one of two obligors, that he has thereby released both, whether he intended it or not. If, to leave such a question to the jury as a mere *matter of fact*, to be decided by them according to their discretion, were to be tolerated, it is easy to perceive that great uncertainty would necessarily arise from it in respect to land titles. And one man in the course of his life might acquire a right by settlement to forty or more tracts of land within the state, and after making the settlement on each, continue to hold them all without continuing a personal residence upon any of them, or obtaining warrants for them from the state; which would be in direct opposition to the whole system of our land laws, and contrary to every act of legislation as well as adjudication on the subject.

The judgment is reversed, and *venire de novo* awarded.