## Brentlinger *against* Hutchinson et al.

Whenever a question of abandonment of title, consisting of an actual settlement, arises from a lapse of time less than seven years, accompanied by circumstances from which it might be inferred that the party intended to abandon, it is a mixed question of fact and law, to be submitted to the decision of the jury.

But when the question arises from mere lapse of time, it is a question of law, to be decided by the court, without regard to the intention of the party ; and if it exceeds seven years, it is a conclusive abandonment in law.

WRIT of error to the common pleas of *Indiana* county.

Ejectment for a tract of land by *William Hutchinson* and others, against *Jacob Brentlinger.* The facts of the case, which gave rise to the only question of law which was argued and determined, were thus accurately stated by his honour, who delivered the opinion of the court.

The defendants in error were the plaintiffs below, and claimed the land in dispute under a settlement right, and as the heirs of *David Hutchinson*, their father. A certain *Thomas Tate*, about 1800 or 1801, built a house upon the land, and moved into it with his family, where he resided, clearing some of the land, and raising grain. He cleared four or five acres in all, up to 1804, when he sold the land to *David Hutchinson*, the father of the defendants in error, and a certain *M'Govern*, and gave up the possession of it to them. They moved on to the land with their respective families ; built an additional cabin upon it, and continued to reside there about one year, when *M'Govern* sold his interest in the land to *Hutchinson*, and left it. *Hutchinson* continued to live there till about the year 1810, when he removed from it about five or six miles off, for the purpose of teaching school. He left no grain growing on it ; but left in the house where he had resided a loom, a couple of stools and a slab table, and fastened the door of the house. The house and land remained unoccupied and vacant for about a year, when *Adam Sides* took possession of it, under a claim which he pretended to have to it ; sowed grain upon it, which he reaped the next. In 1811 *Catherine Hutchinson*, the wife of *David Hutchinson*, and her son, *William Hutchinson*, came upon the land, and were indicted by *Sides* for a forcible entry and detainer. *Catherine Hutchinson*, on trial, was found guilty, but no sentence or order of the court was ever made or imposed upon her. The son was acquitted. They left the land then, and some evidence was given that on quitting it, *Hutchinson* said he would try his right to it at law. From this time until about 1826 or 1827, it did not appear that any body resided upon the land, or even occupied it. In one of these years the plaintiff in error leased

it from *James Findley*, a son, and one of the administrators of *George Findley*, and under his lease took possession of it, and continued to reside upon it in 1829, when this suit was commenced by the defendants in error, as the heirs at law of *David Hutchinson*, who died in the year preceding. The deceased, when he removed from the land, and engaged in teaching school, in 1810, was very poor, and "*had hard scrabbling*," as one witness said, "*to get along*."

The defendant below, beside his possession, which he relied on, among other things, gave in evidence a warrant for three hundred acres of land, adjoining the Laurel Hill and *Michael Huffnagle*, granted to *David Wilson*, and bearing date the 17th of April 1786, upon which a survey was made the 11th of August 1787, containing three hundred and three acres, adjoining *George Findley*, and returned into the surveyor-general's office on the 28th of March 1794. To show, however, that this warrant and survey had been revoked in its location upon the land in dispute, under the provisions of the first and second sections of the act of the 29th of March 1792, *Purdon's Dig.* 527, the defendants gave in evidence a certified copy from the surveyor-general's office, of the certificate of *John Moore*, the then deputy surveyor of the district, dated the 25th of April 1794, showing that unappropriated land was not to be had for this warrant; and then the certificate of *Daniel Broadhead*, the surveyor-general, directed to the receiver-general, and dated the 10th of May in the same year, showing that *Daniel Wilson*, the warrantee, was entitled to a credit in the land office, upon the faith of the deputy surveyor's certificate for the amount of the moneys paid by him for the warrant. The defendant below objected to the admission of these certificates in evidence ; the court overruled the objection, to which the counsel for the defendant below excepted, and a bill of exception was allowed and signed by the court.

The defendant below also gave in evidence another warrant, dated the 19th of November 1808, for two hundred and seventy-five acres, interest to commence from the 1st of November 1794, which was granted to *George Findley*, and a survey made thereon of two hundred and ninety-nine acres and sixty-four perches, the 20th of June 1811. It was also testified that both *Sides* and *George Findley* claimed the land at one time, and a deed of conveyance from *Sides* to the administrators of Findley, dated the 9th of March 1816, for the land in dispute, was given in evidence. It did not appear in evidence, on the trial, that *George Findley* ever had any settlement upon the land, to authorise his obtaining a warrant for it. The jury, after receiving the charge of the court below, returned a verdict in favour of the defendants in error, upon which the court rendered a judgment.

*Stannard*, for plaintiff in error.
*White*, for defendant in error.

[Brentlinger v. Hutchinson.]

The opinion of the court was delivered by

KENNEDY, J.—Seven errors have been assigned by the plaintiff in error, none of which, excepting the sixth, are considered sustainable by this court. Indeed, the sixth is the only one that was pressed and relied on by his counsel, at the time of argument here.

The sixth error is, that the court below, in their charge to the jury, directed them that they ought not to presume an abandonment by *Hutchinson* of his settlement right to the land in dispute.

From 1811, the time when the wife and son of *David Hutchinson* were on the land and left it last, until the commencement of this action of ejectment, a period of eighteen years, neither he, although he continued to live seventeen years of that time, nor his heirs, after his death, ever made the least effort, that we have heard of, to recover or take the possession of the land again. The only excuse or apology that has been offered for this delay and lying by is, that he wished, as he said, when he left the land last, in 1811, "to try his right at law to it," and that no person took actual possession of it afterwards, to afford him the opportunity of bringing an action of ejectment, until *Brentlinger*, the plaintiff in error, came on it. But, it must be recollected, that that was in 1826 or 1827, at least one, if not two years before *Hutchinson's* death, which was ample time for him to have brought his suit in, if he had intended it. Again, if he had really been desirous to have *tried his right at law*, and seeing that no one took possession of, or occupied the land in any way, it would have been more safe, as well as more wise, for him to have returned to the land with his family, or, otherwise, to have got a tenant to have done so, and to have entered upon and held the possession of it, until it was taken from him by process of law. If he had done so, his adversary, if disposed to contest his right, must, in that case, have become the plaintiff, and made *Hutchinson* the defendant, which, as every one knows, is a very material advantage gained in action of ejectment. And if being thus in possession of the land, his adversary had declined bringing a suit for the recovery of it, he, of course, would have held it without the vexation, trouble and costs necessarily attending upon a suit at law. This would surely have been the utmost that he could have wished. I must, therefore, consider the circumstances of the land lying vacant and unoccupied for so great a length of time as fifteen or sixteen years, instead of making in favour of the plaintiff below, or furnishing the least excuse for lying by, and not resuming the possession of it, and again making it the place of his abode, as one of the strongest reasons that could be well imagined, for inferring an *intentional abandonment* on the part of *David Hutchinson*.

The definition of a settlement upon land, is given in the act of assembly of the 30th of December 1786, which has been considered nothing more than declaratory of what was the common usage and law in relation to it before that time, as well as since. *Clark* v. *Hutchinson*, 3 *Yeates* 269. It is thereby declared, "that by a settle-

[Brentlinger v. Hutchinson.]

ment, shall be understood an *actual personal resident settlement,* with a *manifest intention* of making it a place of *abode,* and the *means of supporting a family,* and *continued from time to time,* unless interrupted by the enemy, or by going into the military service of the country during the war." Again, by the act of the 22d of September 1794, it is enacted that, " from and after the passing of this act, no application shall be received at the land office, for any lands within this commonwealth, except for such lands whereon a settlement has been made, or *hereafter* shall be made, *grain raised,* and a *person or persons residing thereon.*" It appears from these acts of the legislature, as well as every other relating to the same subject, that *continuity of possession,* and *personal residence* of and upon the land, are made the very essence of a settlement. By the first act it must have been *continued from time to time,* unless interrupted by the enemy, or going into the military service of the country during the war ; showing that nothing but the *force of a public enemy,* or a *demand for his service in the defence of his country against such enemy,* would excuse, or be received as such from a settler, for quitting his possession. And by the second act it is apparent that this *continuity of possession* and *personal residence* was considered of so much importance, that no application for a warrant was to be received at the land office, unless the applicant, or some one or more under him were *actually residing* on the land at the time of the application. Thus demonstrating, most clearly, that no previous settlement, however long continued, or however extensive and valuable the improvements upon the land might be, would, unless the personal residence were kept up and continued, avail, and entitle the settler to a warrant for the land.

The late Chief Justice *Tilghman,* in delivering his opinion in the case of *Cluggage* v. *Duncan,* 1 *Serg. & Rawle* 120, 121, says, " abandonment is not in all cases a matter of fact. It may be a conclusion of *law* from *facts.* Where a man makes a settlement and *leaves it for a great length of time,* it does not signify for him to say, that he keeps up his claim. The law declares that such *verbal claims* have no avail against the *act of relinquishing the possession.* And in such case I consider it as the right of the judge to declare the conclusion of law." And in a later case, *Watson* v. *Gilday,* 11 *Serg. & Rawle* 340, where Mr Justice *Duncan* delivered the opinion of this court. He says, " a man may abandon his settlement, and that abandonment may be of such a cast as that the court will decide it as a *matter of law,* independent of the statutory provisions of limitation as to seven years, because *continuity* of actual residence and possession, is the very vital principle of this right, and is a part of its legal definition. Hence it is determined that settlements must not have the smallest cast of abandonment. The abandonment, then, is not constructive, but absolute ; a *dereliction of the possession,* which amounts to a surrender of the pre-emption right, *unless this dereliction is accounted for by some extraordinary occurrence,* as being dispossessed *by force,* and an *immediate prosecution of the right,* or pro-

G

[Brentlinger v. Hutchinson.]

secution *within some reasonable time,* or being driven off by the public enemy."

By the fifth section of the limitation act passed the 26th of March 1786, persons who had claims to land founded upon settlement, improvement or occupation, without other title, were debarred from bringing actions for the recovery of them, unless they or those under whom they claimed had had the quiet and peaceable possession of the same within seven years next before bringing their actions. This section of this act was considered so just and reasonable, that it was, for a considerable time after its passage, applied by the courts of the state to cases where settlers had left and deserted the possession of the lands held by their settlements, subsequently to the date of its passage.    It has however of late, from its terms, been held to extend only to cases of abandonment before that time.    It is certainly true that it is retrospective in its terms: but then it shows what was at that time considered by the legislature the utmost indulgence that ought to be allowed to a settler who had quitted his settlement and improvement, to resume the possession of it again.

One thing however is demonstrated most clearly by this section, taken in connection with the third section of the act, that the legislature intended that settlement-rights should not be placed on the same footing with titles held under locations or warrants and surveys returned into the surveyor-general's office, because the third section allowed to all such, who were not in possession at that time, and where adverse possession of the land had been taken and was held by others fifteen years, to bring suits for the purpose of recovering the possession thereof; whereas no time was allowed to those who claimed merely by settlement right, unless where they had been driven off by force or terror of the savages or other persons, &c. and in that case they were only allowed *five years* for regaining their possession.    It is impossible for us to close our eyes against all the various provisions and directions of the legislature at different times on the subject of settlement-rights to land : first, in defining what shall constitute a settlement, and how the residence and possession shall be kept up and continued in order to make it available ; and in the next place treating it as a privilege that is granted without consideration, and if the possession be relinquished without good cause for any length of time, a forfeiture may be declared without time given for redemption.    I am not now to be understood as speaking of settlements made upon land lying north and west of the rivers Ohio and Alleghany and Conewango creek, because I look upon settlements made there as part of the consideration stipulated to be given to the state for the land under the act of the 3d of April 1792, and are to be of a certain extent and of certain duration.

It has been said that settlement rights are of more value and more to be regarded in law now than formerly ; that is true ; but since the legislature have acted upon the matter and defined what they shall be, and how they shall be kept up and continued, no estimation

[Brentlinger v. Hutchinson ]

can be put on them that is not authorised by what they have been pleased to declare and direct. Whatever these rights were immediately after the act of the 22d of September 1794, they must be now nothing more or less. Since that, the legislature has made no change whatever in respect to their nature and character. In 1795 in the *Lessee of Howard* v. *Pollock*, 1 *Yeates* 512, they were classed among the *imperfect rights*. In the same year in the case of the *Lessee of Smith* v. *Brown*, Chief Justice *M'Kean*, who pronounced the opinion of the court, says, "there are three kinds of rights: *jus proprietatis, jus possessionis* and *jus vagum* or an imperfect right; settlements may be ranked among the latter species. It is *a right to pre-emption;* a *claim to favour.* And as late as 1824, in *Smith* v. *Oliver*, 11 *Serg. & Rawle* 266, the present chief justice of this court calls a settlement right a " mere equity:" and therefore it was decided in that case, that one could not be seised of an improvement right for the use of another.

Upon the principle of *continuity* of possession and *residence*, which is so *expressly* required by our acts of assembly on the subject, it has been decided that the same "man cannot be an actual settler on two tracts of land:" and that the title of the settler does not depend on the extent of his improvements, but on the *animo residendi* and the possession continued. See *Lessee of M'Laughlin* v. *Maybury*, 4 *Yeates* 537, 538. It is obvious a man can have but one place of *abode* at the same time. To constitute a settlement right to land, the settler, as we have seen, is required by the acts of the legislature to make the land the place of his *abode* and to continue it; the moment therefore that he changes and fixes his *abode* elsewhere, unless driven to do so by force or he enters into the military service of his country in defence of its liberty and rights, the former ceases to be his place of abode and his right to it by settlement would seem to cease also, upon a literal construction of these acts.

In *Star* v. *Bradford*, 2 *Penns. Rep.* 384, where a descriptive location was obtained by one in 1769 who had a survey made on it, and a warrant by another in 1784 who had a survey made and returned but no return was made of the survey on the location until 1788; it was held and decided as a question of law by this court, without taking into the account the time that the land office was closed during the revolutionary war, that the neglect on the part of the owner of the location in not having a return made earlier of his survey, was an abandonment *in law* of his right under it and was therefore postponed to the right under the warrant. Mr Justice *Rogers* who delivered the opinion of the court in that case seemed to think that the time allowed for making a return of the survey in such case ought not to exceed seven years upon principle of analogy to the fifth section of the limitation act of the 26th of March 1786; and that as often as the question of abandonment arises for mere lapse of time, where there is no dispute as to length of it, it is a *question of law to be decided by the court* without regard to the inten-

[Brentlinger v. Hutchinson.]

tion of the party. In this sentiment or rule I most fully concur; and agree also that the limitation of time should not be permitted to exceed seven years. It is surely of great importance to the community, as well as individuals, that the rule on this subject should be fixed, uniform and known. I would also say that wherever the question of abandonment is made upon a lapse of time less than seven years, accompanied by circumstances from which it might be inferred that the party *intended* to abandon, that it was a mixed question of fact and law to be submitted to the decision of the jury. It is certainly the law that a party may abandon at any time, within seven days if he chooses, and wherever he has relinquished the possession of the land within less than seven years, it would become a matter of contention then to be settled by the jury.

In giving this indulgence to an actual settler, I am far from being perfectly satisfied that it may not be in opposition to the will and intention of the legislature, as it has been manifested in their acts on this subject; but still I think it would be sufficient to give repose and quiet to the public, and at the same time afford ample security to the rights of individuals. The most formidable objection which I see against extending the indulgence to seven years is, that it may often prevent the state from disposing of the land to others who are willing and desirous to pay the state for it, and might savour of the idea of enabling one person to hold two or more tracts of land by settlement right, by shifting and changing his possession and residence from one to another once in every seven years, until he went around the whole, which I am strongly inclined to believe was never intended.

In the case under consideration, however, not only seven, but at least seventeen or eighteen years elapsed from the time that *Hutchinson* lost, left, and relinquished the possession of the land, before he, or those claiming under him, made any attempt to recover it. And in the absence of all colourable excuse for this long delay, I have no hesitation in saying that there was an abandonment in law of his right by settlement, and that the court below ought to have told the jury so, instead of directing them that an abandonment ought not to be presumed.

The judgment of the court below is reversed.