## Roland *versus* Long.

Where one obtains a descriptive warrant, and pays the purchase money and office fees, and has a survey made on the ground, by the deputy surveyor, whose fees have been paid, but whose return of survey is lost, the warrantee continuing to claim the land, and has a small portion of it cleared, and cut timber on other parts of it—such land is not subject to appropriation, by warrant and survey, by one who has actual *notice* of the facts.

Error to the Common Pleas of *Perry county*.

This was an action of ejectment, by Roland *vs.* Long, for twenty-seven acres of land, more or less, in Perry county.

Long claimed under an application and warrant, in 1815, for fifty acres, and payment of purchase money.

The land was described in the warrant as follows:

"Fifty acres of land, situate in the township of Toboin, and county of Cumberland, adjoining lands of the heirs of David Reed on the north, George Foust on the east and south, and John Alexander on the south, Frederick Fought and William Rowlin on the west."

The field notes of the survey made by Clark were indorsed, in his handwriting, on Long's warrant in the deputy surveyor's office.

4th September, 1815, receipt to John Long, by State Treasurer, for $13 33, and fees $4 50.

22d June, 1849, survey of thirty-six acres ninety-one perches, for John Long.

Before Clark was called as a witness, defendant proved, by a certificate of the Surveyor General, under the seal of his office, that upon diligent search in his office, for a return of survey upon John Long's warrant, dated 4th September, 1815, he could find none made prior to October 24th, 1849.

Whether a survey was made on this warrant, was made a question. No return of it was made till 1849.

Indorsed on the warrant were notes of survey; and plaintiff produced Clark, who testified that he was deputy surveyor in 1815; that he had Long's warrant; went upon the ground, and made a survey; that the notes on the warrant are the lines he run; that he made a draft, and recollects making a return; remembers sending it to the land office, with some others; this was his usual way; spoke of this from his habit, &c.; cannot say, distinctly, how he sent it—whether by mail or hand.

The admission of Clark's evidence, as to what he did in returning the survey upon the old warrant, was excepted to on part of plaintiff.

Roland, the plaintiff, claimed under a warrant, dated in Febru-

[Roland *v.* Long.]

ary, 1849, for twenty-five acres, and survey of twenty-seven acres, &c., in April, 1849, and subsequently returned.

Admitted that *defendant was in possession.*

For facts, see extract from charge.

Wilson, who surveyed the land on Roland's warrant, said that when he executed the warrant for Roland, there was a small field cleared on the land—two or more acres. Long lived on another tract, but occupies both tracts now, as one farm.

Both surveys returned into the land office at the same time, and caveats entered as to the acceptance of each.

The counsel for plaintiff requested the court to charge the jury, and file their charge of record on the following point:

That no survey having been returned into the land office, by John Long, on his warrant of 4th of September, 1815, until 24th of October, 1849, and then a return of survey, junior, in point of time, to the plaintiff, and having paid no taxes for the land in controversy from the year 1826–7 and '8, constitute, in law, an abandonment of the land in controversy, and the plaintiff, having taken out a warrant for it on the 26th of February, 1849, and paid the commonwealth the purchase money—had it regularly surveyed by the deputy surveyor of the county, on the 28th of April, 1849, and returned into the land office on the 24th of October, 1849, vests in the plaintiff the legal title to the land in controversy, and entitles him to the verdict of the jury in this action.

Charge of the court, WATTS, President Judge:

The defendant's title is founded upon a precisely descriptive warrant, upon which the whole amount of the *purchase money and fees were paid,* for fifty acres, dated the 4th September, 1815, directed to Robert Clark, Esq., deputy surveyor, which was soon after delivered to him, and upon which he testifies that he made a survey upon the land in dispute while he was in office, and of which he made a draft, and sent it to the land office, and for which Mr. Long paid him his fees. It appears that no such survey and return reached the land office; at least, no evidence of it is to be found. That the survey was actually made upon the ground seems to be clear, for the notes of it are indorsed upon the warrant, in the handwriting of the deputy, Robert Clark, and William Wilson, the present deputy, testifies that he blocked some of the lines on the ground, and found them to correspond with Mr. Clark's work. Thus the matter remained until the 26th of February, 1849, when the plaintiff makes an application for the same lands, pays the purchase money and fees, and obtains a warrant also, precisely descriptive for twenty-five acres, and which he puts into the hands of the deputy surveyor, who, on the 28th of April, 1849, makes a survey of the land. About this time or soon after, Mr. Long learns this, he procures the same deputy to

make another survey upon his warrant of 1815, which he did on the 22d of June, 1849. Mr. Wilson, as he testifies, knew of the existence of Long's warrant when he made the survey for Roland; and that the land office might grant the title to him who was entitled to it, he made the return of the surveys upon both warrants, on the 24th of October, 1849, after this suit was brought.

It is clearly proven that Roland, when he made his application and obtained his warrant, had full knowledge of John Long's title, and had known it for many years before.

These are the leading features of the respective titles of the parties.

If the jury believe that Long obtained his warrant in 1815, delivered it to the deputy surveyor, paid the fees, had the survey made within a short time, then his title is older and better than that of the plaintiff, Roland, unless, from other evidence in the cause, he has abandoned that title, and, from his negligence to perfect it, has justified Roland in obtaining a warrant for the same land.

Plaintiff's first point read. We cannot instruct you that these facts constitute a legal abandonment of the land by Long; for if, when he obtained his warrant, he paid his money in full to the commonwealth, and paid the deputy to make the survey, and it was made, and when he learns that the deputy had not made a return yet, procures it to be done, we instruct you, that there was not such an abandonment as to justify Roland, who had a full and perfect knowledge of Long's title, to take out a warrant for the same land. The non-payment of taxes by the owner of unseated land, is evidence of abandonment so far as it goes; but it is not *conclusive* evidence, and may be rebutted by the facts that the warrantee had paid his purchase money, had cleared part of the land, and continued, occasionally, to cultivate it as part of his farm, and used that not cleared by cutting timber upon it when he found it necessary.

The facts do not justify us in instructing you that they constitute a legal abandonment of the title by John Long; but if you find, as a matter of fact, that he did abandon his older title, then Roland would be justified in taking a warrant for it.

The jury rendered a verdict for the defendant.

Errors assigned:

1. The court erred in overruling the objections to the testimony of Robert Clark, Esq., as stated in plaintiff's first bill of exceptions.

2. The court erred in telling the jury, that if "Long obtained his warrant in 1815, delivered it to the deputy surveyor, paid the fees, had the survey made within a short time, then his title is older and better than that of Roland, the plaintiff, unless, from

[Roland *v*. Long.]

other evidence in the cause, he has abandoned that title, and, from negligence to perfect it, has justified Roland in obtaining a warrant for the same land."

3. The court erred in their negative answer to the plaintiff's point. It should have been answered affirmatively.

The case was argued by *Hepburn* for plaintiff in error, with whom was *Anderson*.—That a missing record may be proved by secondary evidence, see 6 *Barr* 162; 10 *W*. 66–7; 5 *W*. 219; 7 *Barr* 30; 9 *Barr* 145; 2 *W. C. C. Rep*. 1; 6 *Barr* 55; 1 *do*. 457, 503; 2 *do*. 461; 3 *W. & S*. 397; 3 *Wh*. 250; 6 *W*. 456; 4 *W. & S*. 74.

*Macfarlane*, contra.

The opinion of the court was delivered by

ROGERS, J.—The facts on which the cause turned are clearly stated in the charge of the court. It appeared that the defendant Long, obtained a descriptive warrant of the land in dispute, of a date prior to the plaintiff's warrant, that the purchase money was paid to the Commonwealth, a survey made by the deputy surveyor, in due and proper time, his fees paid by the owner, and that the only defect of the title was that the deputy surveyor had failed to make a return of survey to the land office for a term of upwards of seven years, from the time of issuing the warrant. It also appeared that Roland, when he made his application and obtained his warrant, had full knowledge of Long's title, and had known it for many years before. On these facts the court instructed the jury that if they believed Long obtained his warrant in 1815, delivered it to the deputy surveyor, paid the fees, had the survey made within a short time, then his title is older, and better than that of Roland the plaintiff, unless from the evidence in the cause it is shewn he has abandoned that title, and from his negligence to perfect it, has justified Roland in obtaining a warrant for it. This part of the charge neither has nor can be excepted to, with any show of reason. And the only question is, whether plaintiff has shewn that Long abandoned his title, or was guilty of such neglect in perfecting it, as justified Roland, in taking out a warrant for the same land.

The plaintiff insists that inasmuch as no survey was returned into the land office by Long, on his warrant of the 4th September, 1815, until the 24th October, 1849, and then having returned a survey junior in point of time to the plaintiff, and having paid no taxes for the land in controversy, and the plaintiffs having taken out a warrant for it on the 26th February, 1849, and returned into the land office on the 24th October, 1849, vests in the plaintiff a legal title to the land in controversy. The court, however, re-

fused to instruct the jury that these facts constituted a legal abandonment of the land by Long, and this instruction was undoubtedly correct. For if, (as was not denied,) when Long obtained his warrant, he paid his money in full to the commonwealth, paid the deputy to make the survey, and it was made, and when he learns the deputy has not made a return, procures it to be done, it has no cast of abandonment about it. It requires clear, stringent proof to make us believe, that a man has abandoned property, for which he has paid, and still more, to infer this, as a conclusion of law, when the owner has done every thing in his power to perfect his title, except that he has neglected to see that the deputy surveyor has omitted to perform his duty, by returning the survey into the land office. The non payment of taxes by the owner of unseated lands, as the court correctly says, is evidence of abandonment; but it is not conclusive evidence, and consequently may be rebutted; and the court might have added, as matter of law, was rebutted by the fact in proof, that the warrantee had paid his purchase money, had a survey made, paid the surveying fees, had cleared part of the land, and continued occasionally to cultivate it, as a part of his farm, and used that not cleared by cutting timber upon it, when he found it necessary. On this uncontested state of facts, the court would have been justified in charging the jury, that there was no proof whatever of which the jury would be permitted to find the abandonment of the land. For although abandonment is usually a question of intention, and as such referable to the jury, yet under certain uncontradicted facts, the court may pronounce upon it, as a question of law: 1 *Watts* 51–2, Brentlinger *vs.* Hutchinson. It would be an abuse of terms, to find an abandonment on such a state of facts. The court, however, merely refused to instruct the jury, as requested, but referred *it to* them, to find, as a question of intention, whether Long designed to abandon his older title, thereby justifying Roland in taking a warrant for the same land. If there be error in this part of the charge, it is error, of which the plaintiff has no right to complain. If there was no abandonment, then it is clear Long continued the equitable owner of the tract up to the time Roland took out his warrant. For it is difficult to understand that Long could loose his equitable title, merely because he neglected to compel the deputy surveyor to return the survey. And this we esteem not to be an idle, but an important distinction bearing directly upon the point, on which this cause must necessarily turn, viz: that Roland, at the time he took out his warrant, was perfectly aware of Long's title. For if the land was abandoned, a knowledge of that fact, I agree, could not affect the subsequent title ; for the land in that case being vacant, there would be nothing to prevent a subsequent purchaser from laying his warrant upon it. So, if Roland had been ignorant of the situation of Long's equitable title, Long would

[Roland *v.* Long.]

be postponed, by the negligence of the deputy surveyor, for his neglect will not protect the owner, as is ruled in Strauch *vs.* Shoemaker, 1 *W.* & *S.* 166, longer than seven years. An applicant is not bound to look beyond the land office, and although a warrant may be issued, and money paid, yet if there be no return of survey in the office, the title under a junior warrant will be good. If he neglects to see to the return of survey for a longer period than seven years, it is at his own peril. He must be content to lose his land, if another applies for it, pays his money, and has his title perfected. The state is interested that all the land surveyed should be paid for; and the public has a right to know what land has been appropriated, that individuals may not lose their money or their labor, in acquiring title to it. A knowledge of a warrant being issued is nothing, for the applicant has a right to act, on the assurance, arising from the want of a return of survey, that the original warrantee, for some cause, has abandoned his title. A subsequent warrantee is not bound to look further than the office itself, and if he pays his money for his warrant, he ought not to lose it, although the title not being perfected, may have arisen, in part, from the fault of the deputy surveyor. The remedy of the owner is against the deputy surveyor. As against others, he is in default, because he has omitted to compel the return of the survey. But can these principles apply to the case, when it is in proof by uncontradicted testimony, that the subsequent warrantee, when he made his application and obtained his warrant, had full knowledge of the prior title, and had known it for many years, as the evidence in this case is Roland always knew the land had been appropriated, and the state paid for it, as he himself confesses, for when he put his warrant into the hands of the deputy, being told the land was not vacant, that Long had a warrant for it, he replied that he knew that, and had known it for twelve years, but that he had taken advice about it, and that Long's title was not good. The case then is that of a subsequent warrantee who knew when he paid his money to the commonwealth, that the owner of the prior warrant had an equitable title to the land, that it had not been abandoned. Roland knew that Long had paid the whole amount of the purchase money, and was then in the actual enjoyment of the land, cultivating part of it. He was neither deceived nor misled by Long, and it would be a hard case if the latter should lose his land, in favor of a man standing in the position of the former, merely because of an imperfection in the title, arising from a failure to return the survey, a defect which neither injures the state, which has received the purchase money, nor Roland, who purchased with a full knowledge of all the facts.

The owner of an equitable title, it is true, may be postponed to a *bona fide* purchaser without notice, but never as to a purchaser

[Roland *v.* Long.]

with notice.  The latter has no equity, and the maxim applies *prior in tempore, potior est in jure.*  The clear distinction is, as I have endeavoured to shew, between those cases where the title has been abandoned, and consequently no title exists, and where a title remains an equitable title, but imperfect, because the warrantee or owner has failed or omitted to do that which is necessary to complete it.  In the former, notice, for a reason already given, will not affect the title of the subsequent warrantee; in the latter, the title of the owner of the original warrant is good as against him.

. It is however said, that notice was held to be immaterial in Strauch *vs.* Shoemaker, 1 *W.* & *S.* 166, already cited.  In that case the general principle is decided, that it is essential to the validity of a title founded upon a warrant and survey, as against an intervening right, that the survey shall have been returned within seven years.  The judge who delivers the opinion of the court says, notwithstanding the property, which was unseated, may have been assessed, and the taxes paid by the owner, that he used it as woodland, for the purpose of supplying the farm on which he resided, with fire-wood, rails and timber, that he claimed title, and this with *the knowledge of the improver;* yet after the lapse of seven years, his right is forever postponed to the intervening right, which attaches to an improver, or to the owner of a warrant with a survey.  The case of Strauch *vs.* Shoemaker, is the case of an application where no money was paid, and was ruled as a case of abandonment, where, as has been before remarked, it is of no sort of consequence, whether the owner of the younger title had, or had not notice.  It is therefore clearly distinguishable from this case.  The court say, it cannot be endured, that a person who has paid nothing, shall be at liberty to hold the state's land for an indefinite length of time, while he himself is at liberty to reject or retain the land at his pleasure. Here, as has already been remarked, the state is not injured, because the purchase money is paid, nor is the warrantee at liberty to complain, as he had full notice of the satisfactory equitable title of the defendant.

. It is said the court erred in permitting Robert Clark, Esq., to prove that he was the deputy surveyor in 1815, that he then executed the warrant to John Long, made a draft of it according to the notes on the warrant, and that he sent the return to the land-office; and also, that the fees were paid for making and returning the survey by John Long.  The evidence was objected to on the ground, that the party cannot prove the return of survey, by any other evidence than that found in the land-office.  For that purpose the evidence was clearly inadmissible, 2 *Yeates,* 446; Dawson *vs.* Laughlin, 5 *Watts,* 222; Goddard *vs.* Gloninger.  But the evidence was neither admitted nor used with that view, but it was admitted as proof of the diligence exercised by Long, and the

[Roland *v.* Long.]

deputy surveyor, in executing the warrant. It was very material, on the question of abandonment, to prove that a survey had been made on the warrant, that a draft was made of it, and the surveyor's fees paid. That so far from the survey not being returned because the fees were unpaid, that he sent the return to the land-office, although it unfortunately happened, it never found its way there. The evidence we think thus pertinent to the issue, and as such was properly received, although not admissible to prove a return to the office to perfect the title, which we agree cannot be done by parol, 2 *Yeates*, 446 ; 5 *Watts*, 222 ; Goddard *vs.* Gloninger. Had the defendant proved that the return of the survey reached the office, secondary evidence of its contents would be admissible, on proof it was lost or mislaid. Vide authorities cited by counsel for defendant in error. The case however is not rested on that ground, but that it was evidence ; for the purpose for which it was received and used.

Judgment affirmed.