## Whitcomb *et al. versus* Hoyt.

Abandonment is an entire dereliction of the possession and occupancy of the land, on the terms by which it may be held under the Act of 30th December 1786.

It may be a matter of law to be pronounced by the court, under a given state of facts; or a question of law and fact to be determined by the jury under the instructions of the court.

The lapse of a less period of time than five years, has never been determined to be a conclusive presumption of abandonment, as a matter of law.

Where the interruption of the settler's residence is for a less period than five years, it is for the jury to determine, under all the evidence in the case whether there existed an intention to abandon.

ERROR to the Common Pleas of *Tioga county*.

This was an ejectment brought by Lyman P. Hoyt against Charles S. Whitcomb, Julius Kirkendall, William W. Ballard, and William B. Middaugh, for a tract of land in Middleburg township, containing sixty acres. The land claimed in this action was part of a larger tract, well defined and marked upon the ground, known

[Whitcomb *et al. v.* Hoyt.]

as the "Uriah Leet lot," containing 246$\frac{3}{10}$ acres; and until the 18th September 1854, it was vacant or unappropriated land, the title to which had never been taken from the Commonwealth.

Previous to 1830, one Uriah Leet went upon this lot, built a frame house, cleared and cultivated 10 or 12 acres, and lived upon it for several years. During this time, one Beebe built a log house upon it, and worked upon the lot under Leet.

On the 24th December 1833, Leet's interest in the land was sold by the sheriff, under a *venditioni exponas*, to William Willard, Jr. From the fall of 1833, to the spring of 1834, one Blanchard lived upon it; but, whether under Willard or Leet, did not appear.

On the 10th March 1834, Willard conveyed the land to Norman Andrus, who went upon it, and resided there until 1839. During this period, he cultivated the improved land, cleared and cultivated 28 or 30 acres, and built and occupied a frame barn and distillery upon it.

On the 15th February 1839, Andrus conveyed (by deed, duly recorded on the 21st) to Sylvester Beckwith, who went upon the lot immediately after his purchase, and lived upon it for two years. He then built a house three or four rods over the line of the lot, and upon the public highway, and moved into it. There was no public road which touched this lot; but the Wellsboro' and Tioga road ran six or seven rods south of it. Beckwith owned ten acres of land adjoining this lot, on the south, through which the road passed, and upon which he had a saw-mill, mill-pond, &c. He built his house on the ten acre lot, upon the road, and nearer to his saw-mill.

After Beckwith moved off the land, different persons, under him, lived in the frame house, the log house, and the distillery, which had been changed into a dwelling-house, until 1845–46. About this time, Beckwith commenced using the old frame house as a barn; and the log house, occupied by one Green, was burned down. Green then left the premises for a few months, until the distillery became vacant by the removal of the tenant, when he returned and lived in it, until September 1852. Beckwith then gave Green permission to take it down, and build another from the materials; but Green and his neighbours took it down, and built Green another house about 40 feet over the line of this lot, upon another piece of land.

On the 6th January 1853, Beckwith, being indebted to Benjamin C. Wickham and David H. Tuthill, agreed to sell them a portion of his land, (including the Leet lot) for $12,000; and to make title by a sheriff's sale and deed. This was carried out by a sheriff's sale of the land to Wickham and Tuthill, on the 3d September 1853, and a deed was duly acknowledged to the purchasers. Beckwith continued in possession until the spring of 1856, when he

[Whitcomb *et al. v.* Hoyt.]

gave up possession to the defendants below, who claimed under Wickham and Tuthill.

From 1839 to 1856, Beckwith cultivated the improved land each year, cleared enough more to make about 70 acres, and raised from three to five hundred bushels of wheat upon it yearly, besides other grains and grasses.   He fenced the land, occupied the barns, cultivated and grafted an orchard upon it, and paid the taxes.

On the 18th September 1854, Lyman P. Hoyt, the plaintiff below, obtained from the Commonwealth a descriptive warrant for 60 acres of this land, upon the back end, unimproved.   The warrant was located on the 8th December 1855, and returned 1st February 1856; and this ejectment was commenced on the 29th September 1856.

On the 3d December 1855, Wickham and Tuthill obtained a descriptive warrant for the whole of the Leet lot, as improved land, and paid for the same, with interest from the 1st November 1830.   The warrant was for 231 acres, and returned surveyed upon the same $246\frac{68}{100}$ acres, embracing the Uriah Leet lot only. In the spring of 1856, another house was built upon the premises, which was occupied by Kirkendall, one of the defendants.

The main question in the case was, whether the settlement made by Leet and his successors was lost by abandonment; there having been no personal residence upon the land from the time Green left in September 1852, until the obtaining of the descriptive warrant by Wickham and Tuthill, on the 3d December 1855.

On the trial of the cause, the defendant's counsel offered to prove by Sylvester Beckwith, that he never intended to abandon the land.   The court, however, ruled out the evidence, and sealed a bill of exceptions.

The defendants submitted the following points, and requested the court to charge the jury as follows :—

1. If the jury believe, from the acts of cultivation and cropping, fencing and improving, from the trimming and grafting the apple trees and building the house, the purchase and location of the warrant, and all the evidence in the case, that there was no intention of abandonment, then the plaintiff is not entitled to recover, although there was no personal residence upon the land from the time Green went off in 1852 until Kirkendall moved on in 1856.

2. That the deed from Norman Andrus to Sylvester Beckwith, dated February, 15th, 1839, and recorded February 21st, 1839, was, after being so recorded, and actual occupation of the premises taken under said deed, constructive notice to plaintiff and all the world of the settlement, occupation, and claim of the defendants and their grantors, and the plaintiff having such notice prior to obtaining his warrant and survey, is not entitled to recover.

The court below (WHITE, P. J.) delivered the following charge to the jury :—

. [Whitcomb *et al. v.* Hoyt.]

" Residence and cultivation are the elements of a settlement or pre-emption right under the Act of 1786. Residence without cultivation, and cultivation without residence, confer no right. Both were united in the claim of Uriah Leet, whose pre-emption right was undoubted. If that claim did not embrace the whole of the land now claimed by the defendants, it was extended so as to embrace it by his successor, Norman Andrus, who extended and defined the claim originally made by Leet, and conveyed it to Sylvester Beckwith. Up to September 1852, Beckwith was in possession. Not alone by occupying and using the improved land on the premises and cultivating it from year to year, but by having an actual resident settler upon it from the time he purchased, in 1839, till Green, the last actual resident, removed from it. It can make no difference that Green was not technically a tenant and did not pay rent to Beckwith, nor cultivate or crop the land. He was there residing on the land under Beckwith, and Beckwith was farming it; raising large quantities of grain on it, and adding to the improvement. But the judicial construction given to the Act of 1786 requires continuity of actual residence and possession, and that there should not be the smallest cast of abandonment. Abandonment of what ? Not surely of *claim*, but of *residence* and *cultivation* and of the manifest intention of ·making the land a place of abode, and the means of supporting a family. This is not necessarily a question of intention. The Supreme Court say it may be, in cases when the claimant is dispossessed or driven off by fire or flood, or forcibly by an intruder, and returns again, or brings his action to recover the possession; but he must return within a reasonable time, or make the effort to get back, if expelled by an intruder—by bringing his action to recover possession in a reasonable time. So, when the claimant is deprived of his possession by the collusion of his tenant with an adverse claimant or disseisor. In all such cases, unless he uses reasonable diligence to continue his actual residence upon the land, as well as his possession for purposes of cultivation, the law regards him as having abandoned and forfeited his right.

" In this case, the continuity of residence on the premises in controversy was severed in September 1852, by the removal of Green, the last tenant in possession under Beckwith. Beckwith resided upon a small lot of appropriated land within a few rods of the house Green had occupied, and assented to taking it down, and knew of its removal from the premises, and of its being used in building a small house for Green on land owned by Henry Stevens. No person resided on the vacant land from September 1852, the time of Green's removal, until in September 1856.

" Plaintiff's warrant was granted on the 18th day of September A. D. 1854, and is a descriptive warrant, and his title, although the warrant was not laid until the 8th of December 1855, commenced

at the date of the warrant. The application of Wickham & Tuthill for a warrant was made on the 1st day of December 1855. The warrant issued to them on the 3d of December 1855.

" This warrant was also descriptive, and gave title from its date. After it issued, it was not necessary for them, in order to protect their rights under their settlement claim, if they had any, to build upon the land, and put in a tenant. And the question presented for the determination of the court is, whether the absence of residence on the land from September 1852, until the issuing of their warrant in 1855, constitutes, under the circumstances of the case, an abandonment of the pre-emption claim which Beckwith had to the land, in September 1852, and previously.

" We are of opinion that it does, that no good reason can be extracted from the evidence why the continuity of residence was not kept up, or why so long a space of time was permitted to intervene between the going out of Green in 1852 and the obtaining of the warrant by Messrs. Wickham & Tuthill, in 1855, and without having, in the mean time, an actual resident settlement on the land. No doubt Beckwith and Wickham intended to hold this land. They did not intend to abandon their claim to it. They did continue to occupy, and cultivate and obtain profit from it. But that is not what the law requires. They may even have intended, at some time, to build upon and reside on it, but they abandoned the residence too long to be permitted to resume it as against a *bonâ fide* claimant by warrant. Such a claimant is not affected by the notice of the title or claim spread on the record, by the deed of Andrus to Beckwith given in evidence, nor by actual possession and cultivation without residence. Under all the facts in this case, plaintiff is entitled to recover, and three is no question of intention to submit to the jury."

To this charge the defendants excepted; and a verdict and judgment having been given for the plaintiff below, the defendants sued out this writ, and assigned for error: 1. The rejection of the evidence of Sylvester Beckwith. 2. The charge of the court below.

*Seymour, Wilson & Smith*, for the plaintiffs in error.—Did the neglect of Beckwith and his vendees, to reside upon the land, for a period of about three years and three months, coupled with the evidence of continued and extensive improvements, and the payment of taxes, constitute an abandonment in law without regard to the intention of the parties? That it did not, and that the question of intention should have been submitted to the jury, the leading cases upon this point will show: Jacobs *v.* Figard, 1 *Casey* 45; Smith *v.* Beck, *Id.* 106; Raush *v.* Miller, 12 *Harris* 280; Sample *v.* Robb, 4 *Harris* 305; Noble *v.* McClintock, 6 *W. & S.* 58; Brentlinger *v.* Hutchinson, 1 *Watts* 46; Forster *v.* Mc-

[Whitcomb *et al. v.* Hoyt.

Divit, 5 *W. & S.* 359; Wilson *v.* Watterson, 4 *Barr* 214; Lineweaver *v.* Crawford, 2 *Casey* 417; Heath *v.* Biddle, 9 *Barr* 273; Emery *v.* Spencer, 11 *Harris* 271; Smith *v.* Weld, 2 *Barr* 54; 1 *Greenl. Ev.* 132–3.

*Sherwood & Ryan,* for defendant in error.—Personal residence without cultivation, or cultivation without personal residence, gives no settlement right. Continuity of actual residence and possession is the very vital principle of this right, and is a part of the legal definition. Hence it is held that settlements must not have the smallest cast of abandonment: Brentlinger *v.* Hutchinson, 1 *Watts* 49; Pfoutz *v.* Steel, 2 *Watts* 411; Atchison *v.* McCulloch, 5 *Watts* 15; Smith *v.* Brown, 1 *Yeates* 515; Magens *v.* Smith, 4 *Binn.* 73.

Whenever the question of abandonment depends on mere lapse of time, and there is no dispute as to the length of it, it is a matter of law to be decided by the court: Jacobs *v.* Figard, 1 *Casey* 45; Lineweaver *v.* Crawford, 2 *Casey* 417; Forster *v.* McDivit, 5 *W. & S.* 359; Brentlinger *v.* Hutchinson, 1 *Watts* 46; Pfoutz *v.* Steel, 2 *Watts* 409; Watson *v.* Gilday, 11 *S. & R.* 340; Atchison *v.* McCulloch, 5 *Watts* 13; McDonald *v.* Mulhollan, *Id.* 173; Goodman *v.* Losey, 3 *W. & S.* 526.

The opinion of the court was delivered by

THOMPSON, J.—The land in controversy was part of a larger tract, containing 250 acres, settled in 1830 by Uriah Leet, by residence, cultivation, and raising grain, pursuant to the Act of 30th December 1786, and continuously kept up until September 1852, by those from whom the plaintiffs in error derived their title. The last of the houses which had been built on the larger tract, and which was occupied by a tenant of Beckwith, was about this time taken down, and rebuilt a short distance from where it formerly stood, but a few feet outside the line of the tract. On the 18th of September 1854, Hoyt procured his warrant, on which the land in controversy was surveyed on the 8th of December thereafter, and returned the 1st February 1854. Under this state of facts, the learned judge ruled that the residence, being discontinued so long—about two years—was an abandonment *in law* of the settler's title, and added: " No doubt Beckwith and Wickham intended to hold the land. They did not intend to abandon their claim to it. They did continue to occupy, and cultivate, and obtain profits from it. But that is not what the law requires. They may even have intended, at some time, to build upon and reside on it, but they abandoned the residence too long to be permitted to resume it against a *bonâ fide* claimant by warrant." Here is a clear and distinct annunciation of the principles upon which the case was

[Whitcomb *et al. v.* Hoyt.]

ruled, and it is our duty to see how far it is sustainable on authority.

The defendants below claimed the land as settlers, under the Act of 30th December 1786, it being within their defined boundaries; and about that fact there was no dispute. The Act of 1786 defines what shall constitute a settlement, by providing "that by a settlement shall be understood an actual, personal resident settlement, with a manifest intention of making it a place of abode, and the means of supporting a family, and *continued from time to time,* unless interrupted by the enemy, or by going into the military service of the country during the war." A dispensation in favour of soldiers and sufferers from enemies was so meritorious as to be recognised by the statute, and precluded all other inquiry, when established, on the subject of abandonment. But there are "many other causes of interruption besides those mentioned in the act, which ought to excuse the party for a time at least:" Atchison *v.* McCulloch, 5 *Watts* 13. And whenever these interruptions, or cessations of actual residence by the settler, existed, *his title* was liable to be assailed, and was often destroyed by the antagonist principle of abandonment.

Abandonment is an entire dereliction of the possession and occupancy of the property on the terms by which it may be held under the statute. This is not the most general sense of the term, but the one in which it is to be considered here. Its application to its appropriate subjects is by two different processes. One by the act of the law, to be pronounced by the court on a given state of facts—the other by law and fact together, to be determined by the jury under instructions from the court. The first is forfeiture in the clearest sense, regardless of intention or merit—the last regards both these questions where they exist, and relieves in a proper case from forfeiture. Lapse of time is the usual element that gives vitality to abandonment as a matter of law, while it may be quite an immaterial ingredient in a case where it assumes a mixed character of law and fact; for a settler may, by unequivocal acts and declarations, abandon as effectually by the lapse of a day, nay, of an hour, as he could in a year.

Abandonment, as matter of law from lapse of time, being a forfeiture, should be so limited that the rule should necessarily be "uniform and universal;" that all might know when they were in danger of its vortex, and when to resort to precautions to escape it. At different periods, different rules seem to have been attempted to be established, as to what length of time should elapse, to raise the conclusive presumption, that the settler had abandoned his settlement. In Cluggage *v.* Duncan, 1 *S. & R.* 120, it was said, that "where a man makes a settlement, and leaves it for a great length of time, it does not signify for him to say he keeps up his claim." Abandonment was ruled in that case as a question of law, but the

[Whitcomb *et al. v.* Hoyt.]

length of time does not appear, and the period is left indefinite. In Brentlinger *v.* Hutchinson, 1 *Watts* 46, the abandonment was for a period of sixteen years, and the judgment of the court below was reversed for submitting the *animus revertendi* as a question of fact for the jury, and KENNEDY, J., in delivering the opinion of the court, says, "Where there *is* no dispute as to the length of time, it is a question of law, to be decided by the court, without regard to the *intention* of the party," and then proceeds to enunciate a rule as to the time when the presumption should become a question of law, by saying, "when the question of abandonment is made upon a lapse of time *less than seven years*, accompanied by circumstances from which it might be inferred that the party *intended* to abandon, it was a mixed question of fact and law, to be submitted to the decision of the jury;" and yet expressing some doubt as to whether this rule might accord with the legislative will, as evinced in the Act of 1786, he adds, "but still I think it would be sufficient to give quiet and repose to the public, and at the same time afford ample security to the rights of individuals." This rule was based upon analogy to the 5th section of the Act of 26th March 1786, which limited settlers, out of possession, to that period to bring suit; and also to the presumption of law, that the holder of a warrant, who neglected to have it returned within that period, had abandoned it. The rule resting on kindred analogies, it may now be regretted, that it has not been followed, as in the case of warrant holders. In Atchison *v.* McCulloch, 5 *Watts* 13, the same judge, in delivering the opinion of the court, when the question arose, as in the last case, on lapse of time, says, "If the plaintiff could in this way prevent the state from disposing of the land for *five* or *six years*, he and his heirs might, upon the same plea, and perhaps with truth, too, do it for a century," and lays down the law clearly that six years raised the legal presumption of abandonment, that being the period of non-residence in that case. Here was a departure from the rule. Each succeeding case seems to have been ruled on its own facts, but the question invariably arose on periods greater than five years.

In McDonald *v.* Mulhollan, 5 *Watts* 173, the abandonment was for *over five years*, and in determining how it should be considered, C. J. GIBSON says: "When the plaintiff's warrant was laid, the settlement had been discontinued for *at least five years*, during which time the settler had done no more than virtually assert his claim to the ownership, and profess his design to resume his residence." "It was clearly the province of the court, therefore, to direct that he had abandoned his title in point of law." This case, also abandoning the rule announced in Brentlinger *v.* Hutchinson, may itself become the foundation, aided, perhaps, by analogies of a new rule as to time, of five years for the consummation of the

[Whitcomb *et al. v.* Hoyt.]

presumption from lapse of time.   It is true, that in Wilson *v.* Watterson, 4 *Barr* 214, and in Heath *v.* Biddle, 9 *Barr* 273, a latitude seems to be allowed on the subject not easily reconcilable with either the earlier or later cases; and in Sample *v.* Robb, 4 *Harris* 305, in the opinion delivered by the same learned judge, absence from the premises for nine years was held to belong to that branch of the doctrine properly administrable by a court and jury.  But passing these cases by, the case of Jacobs *v.* Figard, 1 *Casey* 45, opinion by Chief Justice LEWIS, determined that five years and nine months raised the presumption of legal abandonment.   In the same book, at page 106, is Smith *v.* Beck, in which there had been non-residence for ten years, and the same learned judge says: " Where the residence has been discontinued *for the period of five years,* and the discontinuance is not accounted for, it is an abandonment of the pre-emption right, and should be so pronounced by the court as matter of law.   Whether the absence for a shorter period will produce the same effect, has not yet been decided."   But in Goodman *v.* Lacey, 3 *W. & S.* 326, it was determined that six months would not, of itself, amount to an abandonment.

I have been unable to recur to any case in which a period short of five years has been alone held as raising the presumption from lapse of time—while the last case cited shows that six months is too short.

The case of Smith *v.* Beck seems to recognise five years as the boundary of the doctrine, and it is certainly true, that it has not hitherto been passed, and for my own part, I would prefer fixing it as the rule.   But dealing only with the case in hand, the authorities show, I think, very conclusively, that in no case in which the lapse of time was no greater than in the present, has the presumption of abandonment, from this cause alone, been held by the courts.   Nor do we think that, as far advanced as we are from the period and the policy that gave rise to the statutes, we are called upon to contract the rule in regard to actual residence more than our predecessors have done.   As has been stated, the discontinuance of the actual resident possession in the case under consideration, was but a few days over two years before Hoyt's warrant issued.   This was too short to give to it the character of an abandonment, in law, from lapse of time.   The court, therefore, erred in rejecting the evidence offered by the defendants below, for the purpose of proving the *animus revertendi.* The dereliction of the resident possession, and the intention to resume it, was still open to proof and explanation, if it could be given.   Consistently with the ruling in the rejection of the evidence, the learned judge charged that it was a case of legal abandonment, and, for the reasons shown, this was error also.

There was no error in charging that the plaintiff below, if a

[Whitcomb *et al. v.* Hoyt.]

*bonâ fide* warrant holder, was not affected by notice of the record title of the defendants. He certainly was not, if the premises were, in law or in fact, abandoned: 11 *Harris* 271. Nor was there anything in the ground taken on the other side, that the defendants below could not keep up an actual resident possession by a tenant. They could do so: Smith *v.* Beck, *ut supra*. For the reasons given, the judgment must be reversed.

Judgment reversed and *venire facias de novo* awarded.